**PUBLISHED**

FILED: July 7, 2020

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 18-4578
(3:17-cr-00809-JFA-1)
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MICHAEL ANDREW GARY

Defendant - Appellant

_____

O R D E R

_____

Appellee filed a petition for rehearing en banc, and Appellant filed a response in opposition. The petition and response were circulated to the full Court. Judge Richardson recused himself from the case. No member of the Court requested a poll on the petition for en banc review. Therefore, the petition for rehearing en banc is denied.

Entered at the direction of Chief Judge Gregory.

For the Court

/s/ Patricia S. Connor, Clerk

WILKINSON, Circuit Judge, with whom Judges NIEMEYER, AGEE, QUATTLEBAUM, and RUSHING join, concurring in the denial of rehearing en banc:

I concur in the denial of rehearing en banc for one reason and one reason only. The panel's holding is so incorrect and on an issue of such importance that I think the Supreme Court should consider it promptly. Any en banc proceedings would only be a detour. Many, many cases await the resolution of this question.

This court's decision is far-reaching in its implications. It not only creates a circuit split of yawning proportions, but also an equally profound schism with the Supreme Court's whole approach to error review and remediation. Is it eight—or nine—circuits that disagree with us? I have lost count, but the ranks are growing.*

In *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019), the Supreme Court held that the government must prove that a defendant knew about his felony status as an element of an 18 U.S.C. § 922(g) offense. Now our court holds that *Rehaif* error is a structural error that is not amenable to harmless or to plain-error review. *United States v. Gary*, 954 F.3d

---

* Until now, no other circuit has treated a *Rehaif* error as structural when applying plain-error review. Rather, the circuits have uniformly held that a defendant cannot show an effect on his substantial rights where the evidence shows that the defendant knew of his status as a felon at the time of his gun possession. See *United States v. Burghardt*, 939 F.3d 397, 403-05 (1st Cir. 2019); *United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019); *United States v. Denson*, 774 F. App'x 184, 185 (5th Cir. 2019); *United States v. Hobbs*, 953 F.3d 853, 857-58 (6th Cir. 2020); *United States v. Williams*, 946 F.3d 968, 973-75 (7th Cir. 2020); *United States v. Hollingshed*, 940 F.3d 410, 415-16 (8th Cir. 2019); *United States v. Fisher*, 796 F. App'x 504, 510-11 (10th Cir. 2019); *United States v. McLellan*, 2020 WL 2188875, at *6-7 (11th Cir. May 6, 2020); see also *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019). Indeed, the Fifth Circuit has only recently rejected this court's structural error holding. *United States v. Hicks*, – F.3d –, 2020 WL 2301461, at *2 (5th Cir. May 8, 2020).

194, 200 (4th Cir. 2020). Facts are so often the foundation of law. But the panel opinion, put simply, takes flight from the facts in each and every case.

The retreat from the facts is especially egregious here. There is not a chance that Gary's claim would survive the third or fourth prongs of *Olano* or satisfy the reasonable-probability test of *Dominguez Benitez*. Prior to the instant felon-in-possession offenses, Gary was convicted of second-degree burglary and two counts of assault, each punishable by more than one year in prison. For these offenses, he spent upwards of nine years in prison. Moreover, at his sentencing hearing in 2017, Gary admitted that he knew it was wrong for him to have a firearm. The *Rehaif* error could thus not have affected his substantial rights because there is no possibility, not to mention a reasonable probability, that Gary would not have pled guilty had he been informed of that which the government could so easily have proven. And as to the fourth prong of *Olano*, the question simply answers itself. In other words, considering the facts here, nothing about Gary's *Rehaif* claim has so much as a grain of merit.

The Supreme Court has made clear that structural errors are few and far between. This point has been made not once but repeatedly. The Court has found structural error only in a "very limited class of cases," *Johnson v. United States*, 520 U.S. 461, 468 (1997), and has instead "adopted the general rule that a constitutional error does not automatically require reversal of a conviction," *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991).

The narrow band of structural errors is distinct because they inherently taint the integrity of a trial from beginning to end. See, *e.g.*, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (denial of right to counsel); *Sullivan v. Louisiana*, 508 U.S. 275, 281-

3

82 (1993) (defective reasonable-doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986) (racial discrimination in grand jury selection); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927) (lack of impartial judge).

Structural errors are to be limited, in other words, to the kind of error that by itself invalidates the criminal proceeding. See *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (defining structural error as one that "affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself") (internal markings and quotation omitted). A denial of the right to counsel, racial bias in criminal justice proceedings, and an infirm reasonable doubt instruction are easily identified as the category of error that sweeps across any particular offense, and speaks overarchingly to the kind of flaws that any citizen would instinctively know to be both unlawful and unfair. Put otherwise, structural errors are *innately* infectious, necessarily impugning each part of a trial, rather than *potentially* consequential, depending on the facts and circumstances of a given case. Because such errors lack a ready way to quantify their impact, they defy analysis by harmless or plain-error review.

A *Rehaif* error comes nowhere near this level. It is not even close. Rather, it belongs with the large category of errors that the Court has deemed non-structural, in recognition of the fact that the illusory search for perfection in the criminal justice process can so easily, as the saying goes, become the enemy of the good. See, *e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 681-82 (1986) (holding that a restriction on defendant's ability to cross-examine witness in violation of Sixth Amendment was non-structural error); *United States v. Hasting*, 461 U.S. 499, 509 (1983) (same for improper remark regarding defendant's

4

silence at trial in violation of Fifth Amendment); *Chambers v. Maroney*, 399 U.S. 42, 52-53 (1970) (same for admission of evidence taken in violation of Fourth Amendment); see also *Fulminante*, 499 U.S. at 306-07 (collecting cases). To borrow from the *Van Arsdall* Court, these cases stand for "the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promote[] public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall*, 475 U.S. at 681.

Nor does *Rehaif* error gain admittance into the gallery of structural error because it pertains to an element of a charge. I intend no disrespect to the Supreme Court's fine decision in *Rehaif* to note that the appearance of what our court now terms a structural defect has come rather late in the day, after many decades of prior practice to the contrary—a fact that should weigh not only against retroactive review, but against recognition of the error as a structural one as well.

To that end, the Supreme Court has plainly resisted the linkage between elements errors and structural error. Take *Neder v. United States*, for example. 527 U.S. 1 (1999). There, the trial court incorrectly omitted from the jury instructions an element of the offense charged against Neder. The Court squarely rejected the argument that such an error was structural, and instead reviewed for harmless error because "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9. Indeed, time and again, the Court has applied harmless error review to elements errors. See, *e.g.*, *Johnson*, 520 U.S. at 468-69; *California v. Roy*, 519 U.S. 2, 5 (1996); *Yates v. Evatt*, 500 U.S. 391,

5

393 (1991); *Carella v. California*, 491 U.S. 263, 266 (1989); *Pope v. Illinois*, 481 U.S. 497, 502-503 (1987).

Moreover, there are many reasons to think that the guilty plea context is an especially poor one for recognizing an elements error as structural. Indeed, the Court has already decided as much. See *Henderson v. Morgan*, 426 U.S. 637, 645-46 (1976) (surveying factual record before vacating defendant's plea on the ground that he was misinformed as to a key element of the charge against him); *Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (applying fact-bound exceptions for excusing procedural default to defendant's claim that his guilty plea was invalid because he was misinformed as to the government's burden of proof at time of his plea).

In fact, the guilty plea context is one in which the Court has assiduously resisted automatic vacatur of a plea. The standard for vacatur is quite fact-dependent. It asks whether there is a "reasonable probability" that absent the error the defendant would not have entered the plea. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); see also *id.* at 81 n.6 (noting single Rule 11 error "not colorably structural"). I see no reason whatsoever why this standard, so widely adopted and so pervasively relied upon, should be rendered nugatory on the basis of the kind or character of the error asserted rather than its impact on the particular proceeding. The Supreme Court's standard stands in stark contrast to the novel standard adopted in this case. The reasonable probability standard is conscientiously attentive to facts. Our court's opinion is wholly oblivious to them.

Furthermore, the guilty plea context is one where the Supreme Court, again in contrast to this court, has been especially attentive to finality. *United States v. Davila*, 569

6

U.S. 597, 608 (2013) (stressing the "particular importance of the finality of guilty pleas") (internal markings and quotation omitted). The reason for the finality of guilty pleas could not be more evident or obvious. Not only are they uniquely susceptible to buyer's remorse; they rest on a well-understood tradeoff—one where the defendant receives the certainty of present benefits in exchange for forgoing the possibility of some future benefit down the road. *Rehaif* is exactly the sort of future decisional benefit a routine guilty plea ordinarily waives. The panel opinion now seeks to undo all this. For if *Rehaif* is deemed structural, it could be used to overturn a wealth of pleas at some future point in time, given that the courts are more likely to give structural errors retroactive application.

The costs to criminal justice of the panel's ruling are immense. If they were offset by some gain in the administration of justice, that would be one thing. But, as Gary's case shows, the vast majority of defendants who will seek to take advantage of a structural *Rehaif* error are perfectly aware of their felony status. Felony status is simply not the kind of thing that one forgets. It is, after all, a § 922(g) offense that one has pled guilty to, a plea that would wholly lack a factual basis before or after *Rehaif* if the defendant were not a felon. For those very few who claim plausibly to be unaware of their felony status, the reasonable probability standard in *Dominguez-Benitez* stands ready to pick them up.

I hesitate to raise such a mundane consideration as the resources available to judges and litigants in discussing this issue, but it remains the fact that the resources of our system are finite. The erosion of finality in the context of such basic criminal offenses as § 922(g) and 18 U.S.C. § 924(c) will strain the resources of the lower federal courts in no small measure. Not only that, but prosecutorial resources will be tested to the limits by

7

multitudes of defendants seeking to withdraw and renegotiate their pleas. Not only that, but the resources of public defenders will be tested as well, as they try to balance their obligations to existing clients who face serious charges and the legions of defendants who seek to redo past bargains. We are adding not just one, but two major burdens to our system. The first arises from the sheer volume of guilty pleas. The second arises from the fact that § 922(g) is at or near the top of our most frequently charged criminal offenses.

In many instances, the reform of the criminal justice system is salutary. The First Step Act is an example of a long-overdue reform, see Pub. L. No. 115-391, 132 Stat. 5194 (2018), notwithstanding the fact that it adds to the business of our justice system. But there are limits to the extent that each new twist and turn in decisional law should spark a crisis of volume in criminal justice administration.

Volume diminishes those qualities of conscientious deliberation for which, I suspect, each of us who plays some part in criminal justice proceedings would like to be known. This court's ruling is unfortunate in so many ways. I respect the decisions of my colleagues, but I do hope that the Supreme Court will undo the error here and align us with the other circuits in our country.

8