**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4419**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

ERICK RAHUMID HOBBS,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Deborah K. Chasanow, Senior District Judge.  (1:18−cr−00322−DKC−1)

Argued:  December 9, 2021               Decided:  February 1, 2022

Before KING and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Keenan wrote the opinion, in which Judge King and Judge Wynn joined.

**ARGUED:**  Joshua Elliott Hoffman, Baltimore, Maryland, for Appellant.  Brandon Keith Moore, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Robert K. Hur, United States Attorney, Samika K. Boyd, Assistant United States Attorney, Christine O. Goo, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal, Erick Hobbs primarily challenges the district court's denial of his motion to suppress evidence obtained after police collected cell phone location data from his cell phone provider without a warrant on the ground of exigent circumstances. The district court concluded that exigent circumstances justified the warrantless search because Hobbs had a criminal history of violent offenses, presently was armed, and had threatened imminent harm to numerous people, including his former girlfriend, her child, and any law enforcement officers who might try to arrest him.

Upon our review, we agree with the district court that exigent circumstances permitted the officers' search and use of Hobbs' cell phone location data obtained without a warrant. We also reject Hobbs' contention that he is entitled to relief under the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Therefore, we affirm the district court's judgment.


I.

This case arose from allegations of domestic violence reported to Baltimore County police by Hobbs' former girlfriend, Jaquanna Foreman, shortly after 7:00 p.m. on February 3, 2018.[1] At the time, Foreman was home with her seven-year-old daughter. Foreman told the responding officers that Hobbs had come to the back of her home, brandished a semi-

---

[1] Because the district court denied Hobbs' motion to suppress, we recount the facts in the light most favorable to the government. *United States v. Coleman*, 18 F.4th 131, 135 (4th Cir. 2021).

automatic handgun, and used the gun to break a window in the home. He then forcibly entered the home and removed a television. Before leaving the home with the television, Hobbs threatened to kill Foreman, her daughter, and other family members, and stated that if she contacted the police, he also would kill any responding officers.

The officers escorted Foreman and her daughter to the police station, where Foreman provided additional details about Hobbs, including aliases, dates of birth, information about his vehicle and his social media usage, and a cell phone number. She also stated that Hobbs had a criminal record. Foreman informed Detective Michael Nesbitt that, in addition to the handgun Hobbs displayed that night, she previously had seen him armed with assault rifles and that he was "obsessed with firearms." Nesbitt verified that Hobbs had a violent criminal history, including convictions for robbery and attempted murder.

Based on this information, Detective Nesbitt concluded that there was "an extreme urgent threat to the community." Around midnight, he submitted an "exigent form" to T-Mobile, Hobbs' cell phone provider. That request sought immediate police access without a warrant to "pings"[2] revealing Hobbs' cell phone location, and to call logs displaying the phone numbers that Hobbs contacted, which would enable the officers to locate Hobbs. On the "exigent form," Nesbitt stated that the basis for the exigency was "[s]uspect threatened girlfriend[']s life with a handgun, said he will not be taken alive by police[,]

---

[2] Another detective testified that a "ping" is "a GPS [global positioning system] location and a distance from that location where the [cell phone] service provider says the telephone is."

3

was armed." As Nesbitt was preparing this request, another officer began detailing information to obtain an arrest warrant. Within an hour, T-Mobile responded with real-time "pings" on Hobbs' cell phone that alerted Nesbitt every 15 minutes to Hobbs' general location within 3,000 to 5,000 meters. Another detective used call logs obtained from T-Mobile to determine which of Hobbs' associates lived within the geographical range of each "ping" to pinpoint Hobbs' location more precisely.

About six hours after the domestic incident, a team of officers attempted to effect a traffic stop of Hobbs' vehicle. Hobbs tried to flee from the officers until his car eventually collided with a parked vehicle. The officers placed Hobbs under arrest and recovered a loaded handgun on the ground between the driver-side door of his car and the curb. Later that night, Detective Nesbitt secured a search warrant for Hobbs' car, and two days later obtained a search warrant for the same cell phone information obtained earlier pursuant to the "exigent form." The police also executed a separate search warrant for Hobbs' residence and seized 65 rounds of ammunition from his home.

Hobbs was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). He moved to suppress evidence of the firearm, arguing that the exigent circumstances exception to the warrant requirement did not justify the officers' use of the cell phone "pings" and call logs. The district court denied the suppression motion. The court held that the officers reasonably concluded that exigent circumstances justified use of the "exigent form" instead of a search warrant, based on the officers' information that Hobbs was armed and had threatened Foreman, her child, and any law enforcement officers who tried to arrest him. The court also held that Detective

4

Nesbitt reasonably concluded that the "exigent form" was the only way to ensure a timely response from T-Mobile, because "[e]ven an hour delay under the circumstances here could be disastrous." After hearing additional evidence regarding the information provided by T-Mobile, the court reaffirmed its denial of the suppression motion. The court explained that the officers properly used Hobbs' call logs to "narrow the search area" established by the "pings."

At trial, the government played Foreman's 9-1-1 call, in which she reported that Hobbs had a black handgun, and had threatened to kill her, her daughter, and her extended family. The government also introduced into evidence a text message Hobbs sent to Foreman before the incident in which he said, "I want my tv back bitch." Additionally, Detective Nesbitt and other officers recounted their investigation in detail, including Hobbs' arrest and the officers' recovery of the loaded firearm from the vicinity of Hobbs' vehicle and the ammunition from his home. The jury returned a guilty verdict.

Hobbs now appeals the district court's denial of his suppression motion. Also, in supplemental briefing on appeal, Hobbs argues that the district court erred in failing to comply with the requirements of the Supreme Court's decision in *Rehaif*, 139 S. Ct. 2191, which was decided while this appeal was pending.

II.

Hobbs argues on appeal that the officers' use of the cell phone "pings" and call log records was not justified under the exigent circumstances exception to the warrant requirement. Hobbs maintains that the officers lacked information that he would flee from

5

the police and that, therefore, the exigent circumstances exception did not apply. He also asserts that the officers were not facing "imminent harm," and that Foreman and her family no longer were in danger because Hobbs had obtained the television he was seeking. We disagree with Hobbs' arguments.

In reviewing the denial of a motion to suppress, we consider the district court's legal conclusions de novo, and we examine the court's factual findings for clear error. *Coleman*, 18 F.4th at 135. The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches" and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Because the ultimate touchstone of the Fourth Amendment is reasonableness," the Supreme Court has recognized certain exceptions to the warrant requirement. *United States v. Curry*, 965 F.3d 313, 321 (4th Cir. 2020) (en banc) (alteration and internal quotation marks omitted).

At issue in the present case is the exigent circumstances exception, under which a warrantless search will be found valid under the Fourth Amendment when "there is compelling need for official action and no time to secure a warrant." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2534 (2019) (quoting *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)); *see also Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016) ("The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant."). This exception applies when "the exigencies of the situation . . . render the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Curry*, 965 F.3d at 321 (citation, alteration, and internal quotation marks omitted). Thus, when officers face "an immediate

6

and credible threat or danger, it is inherently reasonable to permit police to act without a warrant." *United States v. Yengel*, 711 F.3d 392, 396 (4th Cir. 2013).

Notably, however, the exigent circumstances exception is limited and narrow in application. *Curry*, 965 F.3d at 322. As we observed in our decision in *Curry*, the Supreme Court has identified only a few "emergency conditions" that may support a finding of exigent circumstances: "(1) the need to pursue a fleeing suspect; (2) the need to protect individuals who are threatened with imminent harm; and (3) the need to prevent the imminent destruction of evidence." *Id.* at 321 (citing *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018)) (internal quotation marks omitted); *see also Lange v. California*, 141 S. Ct. 2011, 2017-18 (2021). Courts ultimately evaluate the totality of the circumstances to determine whether an emergency is "enveloped by a sufficient level of urgency" to be reasonable under the Fourth Amendment. *Yengel*, 711 F.3d at 397; *Curry*, 965 F.3d at 316, 322. We consider the "officers' objectively reasonable belief based on specific articulable facts and reasonable inferences that could have been drawn" from those facts. *Curry*, 965 F.3d at 322 (quoting *Yengel*, 711 F.3d at 397) (internal quotation marks and alteration omitted).

This Court has not previously considered the exigent circumstances exception in the context of police use of a cell phone "ping" along with call logs from a suspect's cell phone. In addressing this issue of first impression, we find instructive the Second Circuit's analysis in *United States v. Caraballo*, 831 F.3d 95 (2d Cir. 2016). In that case, after the defendant was suspected of murdering an informant working with law enforcement, the police obtained without a warrant a "ping" on the defendant's cell phone. *Id.* at 97-98. The

7

murder victim, a fellow drug dealer, had informed police several months earlier that the defendant would kill her if he ever learned that she was cooperating with the police. *Id.* at 98. The police also knew that the defendant had access to firearms and previously had committed certain violent crimes. *Id.*

The Second Circuit concluded that exigent circumstances justified the officers' failure to obtain a warrant for access to the defendant's cell phone "pings." *Id.* at 101. The court observed that the officers (1) had "good reason to believe" that the defendant was armed, (2) were aware that he was the primary suspect in a brutal murder, and (3) most importantly, had "specific reasons to think" that he would act to kill undercover officers and other informants who had infiltrated his drug operation. *Id.* at 104-05. Although the officers could have secured a warrant within about six hours, the defendant's cell phone provider typically took multiple days to respond to a warrant seeking such information but would act immediately to comply with any "exigent" request for the same information. *Id.* at 105. And finally, the court noted that police intrusion on the defendant's privacy interests was relatively limited, because the officers' use of the "pings" was "strictly circumscribed" and the officers located the defendant within two hours. *Id.* at 106; *see also United States v. Banks*, 884 F.3d 998, 1012 (10th Cir. 2018) (exigent circumstances justified obtaining "ping" information when defendant had threatened to shoot an informant).

We conclude that the same reasoning applies in the present case. When Foreman recounted Hobbs' actions to the police, she was trembling and distraught, explaining that Hobbs was armed and had threatened to kill her, her minor daughter, other family members,

8

and any law enforcement officers who might try to apprehend him. Foreman stated that Hobbs had brandished a handgun during the incident, owned an assault rifle, and was "obsessed with firearms." Before submitting the "exigent form" to T-Mobile, the officers confirmed that Hobbs had a violent criminal history, including convictions for robbery and attempted murder. After assessing that Foreman's account was credible and observing the damage to her home, the officers had probable cause to conclude that Hobbs had broken into Foreman's home and had committed an assault and a theft inside. The officers were so concerned about Foreman's safety that they escorted her to the police station, an extremely rare precaution according to Detective Nesbitt, and initiated "constant surveillance" of Foreman's residence while Hobbs was still at large.

The record additionally shows that the extent of the intrusion on Hobbs' privacy rights was reasonably confined to the exigency. The officers did not attempt to enter Hobbs' home without a warrant or to track Hobbs' movements for an extended period.[3] Instead, the officers arrested Hobbs from his vehicle within about an hour of receiving the "pings."[4] And perhaps most notably, as in *Caraballo*, 831 F.3d at 99, 105, Hobbs' cell

---

[3] In contrast, the Supreme Court in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), held that individuals have a legitimate expectation of privacy in the "whole of their physical movements" as captured by historical cell site location information and, thus, law enforcement must secure a warrant to obtain such information. 138 S. Ct. at 2211, 2217, 2219. In reaching this conclusion, the Court relied on the extensive volume of data collected by the defendant's cell phone provider over a span of 127 days. *Id.* at 2217. The Court did not express an opinion regarding "real-time" location information or the use of such data under exigent circumstances. *Id.* at 2220.

[4] Our conclusion is not altered by the fact that the officers used Hobbs' call logs together with the cell phone "pings" to determine Hobbs' location. The exigent (Continued)

phone provider was known to be "notoriously slow" in responding to law enforcement search warrants and could take several days to produce the necessary cell phone location information. Given the facts recounted by Foreman, we agree with the district court's observation that even a brief delay in apprehending Hobbs placed many individuals at significant risk of harm. We therefore conclude that the district court did not clearly err in finding that "the only way to get help from T-Mobile" in a timely fashion was by submitting an "exigent form." *See Coleman*, 18 F.4th at 135. Under these circumstances, we hold that the officers reasonably concluded that Hobbs was armed and dangerous, that he posed an imminent threat to Foreman, to her family members, and to law enforcement officers, and that these exigent circumstances required them to seek the cell phone location information from T-Mobile without delay.

In reaching this conclusion, we emphasize that the exigent circumstances exception does not serve as a tool of convenience to be employed by law enforcement in the absence of immediate danger to persons, a fleeing suspect, or the need to "prevent the imminent destruction of evidence." *Curry*, 965 F.3d at 321 (citation omitted). By design, the warrant requirement imposes certain restrictions on law enforcement to protect the rights of suspects. These restrictions include the requirements that officers establish probable cause and seek approval from a neutral magistrate *in advance* of a search. Thus, the time and

circumstances presented here justified the officers' use of these means to determine Hobbs' precise location during the brief time it took to apprehend him. And we observe that we are not faced here with a situation in which officers used other cell phone information such as, for example, historical call records or the contents of text messages, which would require additional consideration of the intrusion on Hobbs' privacy interests.

effort necessary to obtain a warrant ordinarily will not, of themselves, be sufficient to establish exigent circumstances.[5]

Based on the record before us, we hold that the officers reasonably concluded that use of the "exigent form" was necessary to obtain a prompt response from the cell phone provider when an armed and dangerous suspect was at large. We therefore affirm the district court's denial of Hobbs' motion to suppress.

III.

Finally, Hobbs argues that he is entitled to vacatur of his conviction because the indictment did not allege, and the jury was not instructed to find, that Hobbs knew he was a felon at the time of the offense, as required by the Supreme Court's decision in *Rehaif*, 139 S. Ct. 2191. In *Rehaif*, the Supreme Court held that to obtain a conviction under 18 U.S.C. § 922(g), the government must prove both (1) that the defendant knowingly possessed a firearm, and (2) that he knew his status as a felon. *Id.* at 2200; *Greer v. United States*, 141 S. Ct. 2090, 2095 (2021).

---

[5] We note that Detective Nesbitt testified that it was "standard procedure" for the officers to use an "exigent form" instead of obtaining a search warrant. He also stated that he could not obtain a warrant for the "pings" during nighttime hours, although he admitted that he was able to secure a search warrant that night for Hobbs' car. Nevertheless, given the undisputed evidence of the "notoriously slow" response of T-Mobile to law enforcement search warrants, as well as the facts recounted by Foreman and the damage to her dwelling observed by the officers, we conclude that the exigent circumstances exception still is applicable in this case. In the absence of such facts and circumstances, however, the officers' "standard procedure" of bypassing the rigors of the warrant requirement would not satisfy the Fourth Amendment.

Because Hobbs did not raise this issue in the district court, we review his claim for plain error. *Greer*, 141 S. Ct. at 2096. Hobbs bears the burden to show an error that was plain and affected his substantial rights, creating "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* (citation and internal quotation marks omitted). And if Hobbs can make this showing, we will exercise our discretion to correct the error only if it "had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* at 2096-97 (internal quotation marks and citation omitted); *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc).

Addressing this plain error standard in the context of *Rehaif* claims, the Supreme Court has explained:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. . . . Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon.

*Greer*, 141 S. Ct. at 2097. Thus, convictions of multiple prior felonies serve as "substantial evidence" that the defendant knew he was a felon. *Id.* at 2097-98.

In the present case, it is undisputed that the district court erred in failing to instruct the jury on the mens rea required for a conviction under Section 922(g), and that the indictment was defective for failing to allege this element of the offense. We nonetheless conclude that Hobbs has not established that these errors affected his substantial rights. Before the incident at issue in this case, Hobbs was convicted of at least two serious felonies, namely, attempted second degree murder for which he served more than two years

12

in prison,[6] and bank robbery for which he served 10 years in prison. At trial, Hobbs testified that, as a result of these convictions, he was not allowed to possess firearms. And on appeal, Hobbs has not proffered "a sufficient argument or representation" that he would have presented a factual basis at trial for contradicting this evidence that he knew he was a felon. *Greer*, 141 S. Ct. at 2100. We therefore conclude that Hobbs has failed to carry his burden of showing a reasonable probability that he would not have been convicted absent the *Rehaif* error.

IV.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*

---

[6] A Maryland court imposed a sentence of 25 years' imprisonment, with 20 years suspended, on the attempted murder charge, as well as 20 years' imprisonment with 15 years suspended for a related firearm charge.