RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

DOMINIQUE CORDELL WALLACE,

      *Petitioner-Appellant*,

  *v.*

UNITED STATES OF AMERICA,

      *Respondent-Appellee*.

┐
│
│
> No. 20-5764
│
│
┘

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
Nos. 3:15-cr-00098-1; 3:19-cv-01122—Aleta Arthur Trauger, District Judge.

Argued: June 8, 2022

Decided and Filed: August 5, 2022

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Kolya D. Glick, ARNOLD & PORTER KAYE SCHOLER, LLP, Washington, D.C., for Appellant. Cecil W. VanDevender, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Kolya D. Glick, John P. Elwood, Allon Kedem, Andrew T. Tutt, ARNOLD & PORTER KAYE SCHOLER, LLP, Washington, D.C., for Appellant. Cecil W. VanDevender, Philip H. Wehby, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

─────────────

## OPINION

─────────────

MURPHY, Circuit Judge. Dominique Wallace tried to rob a convenience store just weeks after his release on probation from a three-year detention for attempted murder. This crime left an accomplice dead and a victim terribly disabled. Wallace pleaded guilty to, among

other things, discharging a firearm during a "crime of violence" that resulted in death, in violation of 18 U.S.C. § 924(j), and illegally possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). In this collateral challenge, Wallace asserts that we should vacate these convictions because of a pair of decisions that the Supreme Court issued after he pleaded guilty.

Wallace is right with respect to his crime-of-violence conviction under § 924(j). In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Court found part of § 924's definition of "crime of violence" to be unconstitutionally vague. *Id.* at 2336. Given *Davis*, Wallace did not violate § 924(j) because his attempted robbery does not qualify as a "crime of violence" under the constitutional part of § 924's definition. Despite his specific crime's violent nature, his offense falls outside § 924 under the "categorical approach" to answering this crime-of-violence question.

But Wallace is wrong with respect to his felon-in-possession conviction under § 922(g)(1). In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Court held that defendants do not violate § 922(g)(1) unless they *know* that they have been convicted of a crime punishable by more than one year in prison when they possess firearms. *Id.* at 2196. Citing *Rehaif*, Wallace argues that the district court erred by not informing him during his plea hearings that the government must prove that he knew his prior offense (attempted murder) was punishable by more than a year in prison. Yet Wallace procedurally defaulted this claim because he did not raise it in his criminal proceedings, and he has offered no valid reason for us to excuse this default. We thus affirm in part and reverse in part the district court's denial of Wallace's motion to vacate his convictions.

I

Before Wallace turned 18, he had accumulated a lengthy history of run-ins with the law in Nashville, Tennessee. Most seriously, a 17-year-old Wallace and an accomplice robbed a man at gunpoint in April 2012. According to Wallace's presentence report in his federal cases, the robbery victim's attempt to escape the robbery led Wallace to shoot him. A state juvenile court ordered Wallace to be tried as an adult, and a grand jury indicted him on charges that included attempted first-degree murder. The state detained Wallace without trial for three years. Nothing

in the record explains this lengthy pretrial delay. In May 2015, though, Wallace pleaded guilty to attempted second-degree murder, and the state dismissed the other charges. The state court imposed a 10-year suspended sentence. It released Wallace the same month. In his petition to plead guilty, Wallace acknowledged that the state would credit him with his three years of time served in jail. (Under Tennessee law, Wallace also would have been eligible for parole after three years' imprisonment. *See* Tenn. Code Ann. § 40-35-501(c).) He signed a form noting that, as a condition of his probation, he could not possess firearms.

Wallace flouted this condition. Within weeks, he committed the crimes that initiated his federal cases. On June 3, 2015, Wallace and three coconspirators attempted to rob a Nashville convenience store—the "Express Market"—after its 10:00 p.m. closing. Wallace, Demontay Thomas, and Robert Brooks went into the store armed with handguns; a getaway driver waited in the car. When the three robbers entered, the Express Market's owner stood near the cash register and an employee stood near the entrance. The robbers demanded money at gunpoint and forced the employee to join the store owner at the cash-register counter, which was partially protected by a plexiglass wall. Thomas and Brooks attempted to get behind the wall to access the cash register. Thomas crawled under the counter as Brooks squeezed through a gap in the wall. But they did not coordinate with each other. Thomas thus surprised Brooks as the pair simultaneously emerged on the counter's other side. A startled Brooks shot Thomas, who made it back to the entrance before collapsing dead. The gunshot caused Brooks and Wallace to flee. On the way out, Wallace shot the store employee twice—once in the head and once in the stomach. The employee miraculously survived.

Wallace remained at large. A week after this attempted robbery, officers thought they saw him engage in a drug deal. When the officers approached the car in which Wallace was sitting, they smelled marijuana. Seeking to search the car, the officers asked Wallace to get out. As Wallace exited, an officer spotted a handgun underneath his leg. They arrested him for illegally possessing a firearm.

These two incidents led separate grand juries to indict Wallace in separate cases. For the crimes at the store, a grand jury charged Wallace with conspiring to commit Hobbs Act robbery and attempting to commit such a robbery—both in violation of 18 U.S.C. § 1951(a). This grand

jury also charged Wallace with discharging a firearm during a "crime of violence" that resulted in Thomas's death, in violation of 18 U.S.C. § 924(j). As the predicate "crime of violence," the indictment pointed to his two Hobbs Act offenses. The grand jury lastly charged Wallace with possessing a firearm and ammunition as a felon, both in violation of 18 U.S.C. § 922(g)(1). For the incident a week later, a second grand jury indicted Wallace on a third felon-in-possession charge.

Wallace pleaded guilty to all counts in both cases. The district court held a combined sentencing hearing. It heard testimony from the Express Market employee who had been shot. A Yemeni immigrant who had become a U.S. citizen, this employee worked seven days a week before the shooting to help his cousin (the store's owner) operate the store. He sent most of his earnings back to his wife and kids in Yemen. At the time of the shooting, he had been arranging for them to come to the United States because the war in Yemen had made living there unsafe. Immediately after he was shot, he lay on the floor believing that he was going to die due to all the blood. He remained hospitalized for some six weeks and underwent, among other things, three stomach surgeries. For months after his discharge, he needed to use a feeding tube through his nose and could not talk. He continues to suffer significant pain in his face and stomach, and doctors have told him that he will go blind within 10 years of his injuries. He cannot work or support his family. In short, his "life is gone." Sent. Tr., R.232, No. 15-cr-140, PageID 705.

In light of this testimony, the district court called Wallace's case "one of the worst violent cases" it had seen. *Id.*, PageID 803. Wallace's presentence report calculated his guidelines range as 360 months to life imprisonment. The court chose an "effective 360-month sentence[.]" *Id.*, PageID 805. To reach that result, it imposed a statutory-maximum sentence for each of the two Hobbs Act convictions (20 years' imprisonment) and each of the three felon-in-possession convictions (10 years' imprisonment under then-existing law). *See* 18 U.S.C. § 1951(a); 18 U.S.C. § 924(a)(2) (2018). (Recent legislation has increased the statutory maximum for felon-in-possession convictions. 18 U.S.C. § 924(a)(8), as amended by the Bipartisan Safer Communities Act, Pub L. No. 117-159, § 12004(c), 136 Stat. 1313, 1329 (2022).) But the court ordered these five sentences to run concurrently with each other, so they added up only to 20 years of total prison time. Lastly, the court chose a 10-year sentence for Wallace's § 924(j)

conviction for discharging a firearm during a crime of violence that resulted in death. A circuit conflict existed over whether a sentence under § 924(j) must run consecutively with the sentences for the other counts. *See United States v. Wallace*, 772 F. App'x 320, 321 (6th Cir. 2019). The district court sided with those courts that read § 924(j) to mandate a consecutive sentence. This additional sentence gave Wallace a total of 30 years' imprisonment.

Wallace appealed. He argued that § 924(j) did not require his 10-year sentence to run consecutively to his other sentences. We did not resolve this statutory question because the district court had noted that it would have imposed a 30-year concurrent sentence on that count (to reach the same total prison term) if the law gave it discretion to choose between consecutive and concurrent sentences. *Id.* If the district court misconstrued § 924(j), therefore, any error would have been harmless. *Id.*

Wallace then filed a motion under 28 U.S.C. § 2255 to vacate some of his convictions based on *Davis* and *Rehaif*—both of which postdated his guilty pleas. He argued that *Davis* effectively invalidated his § 924(j) conviction because his two Hobbs Act offenses were not "crimes of violence" after the decision. The district court disagreed, holding that attempted Hobbs Act robbery still qualified as a "crime of violence." *Wallace v. United States*, 458 F. Supp. 3d 830, 835–37 (M.D. Tenn. 2020). Wallace next argued that the district court failed to inform him of *Rehaif*'s newly identified knowledge element when it accepted his guilty pleas to being a felon in possession under § 922(g)(1). The court rejected this claim, reasoning that Wallace could not enforce *Rehaif* retroactively through a § 2255 motion. *Id.* at 834–35. The court added that Wallace waived any right to challenge the sufficiency of the evidence by pleading guilty. *Id.* at 835.

II

Our court granted certificates of appealability on Wallace's *Davis* and *Rehaif* claims. Wallace obtained pro bono counsel, whom we thank for ably discharging their duties. We now conclude that Wallace's *Davis* claim has merit because of an even more recent Supreme Court decision. But his *Rehaif* claim fails on procedural-default grounds.

A. *Davis* Claim

Wallace pleaded guilty to "caus[ing] the death of a person through the use of a firearm" "in the course of a violation of" 18 U.S.C. § 924(c). *Id.* § 924(j). Section 924(c), in turn, bars anyone from using, carrying, brandishing, or discharging a firearm "during and in relation to any crime of violence[.]" *Id.* § 924(c)(1)(A). The statute defines "crime of violence" in two ways. Under its "elements" clause, this phrase covers an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A). Under its "residual" clause, this phrase covers an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). In *Davis*, the Court held that the second (residual) clause was unconstitutionally vague. 139 S. Ct. at 2336. We have since recognized that *Davis* applies retroactively in § 2255 proceedings. *See In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020) (per curiam).

After *Davis*, Wallace's two Hobbs Act crimes can be "crimes of violence" only if the offenses fall within the statute's elements clause. Courts must evaluate whether an offense fits this clause using a "categorical approach" that considers the offense's elements in the abstract, not the offender's conduct in a particular case. *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). This approach means that we must ignore Wallace's brutal conduct. We instead must ask whether every conspiracy to commit Hobbs Act robbery or every attempted Hobbs Act robbery will have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

The Supreme Court's *Taylor* decision dictates the answer: No. The government has long conceded that a conspiracy to commit Hobbs Act robbery does not fit within the elements clause. *United States v. Ledbetter*, 929 F.3d 338, 360–61 (6th Cir. 2019). And *Taylor* recently held that attempted Hobbs Act robbery does not either. 142 S. Ct. at 2020–21. We thus must reverse the district court's denial of Wallace's request to vacate his § 924(j) conviction under § 2255.

B. *Rehaif* Claim

Wallace also pleaded guilty to three counts of "possess[ing]" a "firearm or ammunition" after having been convicted of "a crime punishable by imprisonment for a term exceeding one year[.]" 18 U.S.C. § 922(g)(1). Under the version of the statute in effect at the time that Wallace committed his crimes, when a person "knowingly" violated this prohibition, a court could sentence the person to up to 10 years in prison. 18 U.S.C. § 924(a)(2) (2018). In *Rehaif*, the Court held that the statute's "knowingly" state of mind applied not just to its possession element (defendants must know that they possess a firearm) but also to its status element (they also must know that they have been convicted of a crime punishable by more than one year's imprisonment at the time that they possess the firearm). *See* 139 S. Ct. at 2195–96.

Wallace relies on *Rehaif* in an attempt to invalidate his three guilty pleas to being a felon in possession of firearms and ammunition. The district court did not inform Wallace during his plea colloquies that the government must prove that he knew he had been convicted of a crime punishable by more than a year in prison when he possessed the firearms and ammunition. This failure, Wallace argues, rendered his guilty pleas unknowing and involuntary in violation of due process. *See United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020); *cf. Bousley v. United States*, 523 U.S. 614, 618–19 (1998). If he had known of this element, Wallace adds, he would have stood trial.

At the outset, the government does not defend the district court's two rationales for rejecting this claim. It concedes that *Rehaif* announced a substantive rule that applies retroactively to § 2255 motions like Wallace's. *See Baker v. United States*, 848 F. App'x 188, 189 (6th Cir. 2021); *see also Bousley*, 523 U.S. at 620–21. It also does not defend the district court's alternative theory equating Wallace's *Rehaif* argument with the types of sufficiency-of-the-evidence challenges that a defendant waives by pleading guilty. *Cf. United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020). We thus need not consider these matters.

Nevertheless, Wallace faces a different procedural obstacle to raising his *Rehaif* claim in a § 2255 motion. He did not assert this claim in his plea proceedings or on appeal from his convictions. *Cf. Greer v. United States*, 141 S. Ct. 2090, 2096–2100 (2021). His criminal cases

have thus become final. *See United States v. Frady*, 456 U.S. 152, 165 (1982). Under the Supreme Court's procedural-default rule, Wallace's failure to raise his *Rehaif* claim during the "main event" (his criminal litigation) means that he presumptively cannot raise it in an after-the-fact § 2255 motion. *Coleman v. Thompson*, 501 U.S. 722, 747 (1991); *see Bousley*, 523 U.S. at 621–22.

In response, Wallace does not dispute that he defaulted this claim. But he offers two reasons why we should still consider it. He argues that he can show "cause and prejudice" and that he is "actually innocent." Neither theory overcomes his default.

*Cause and Prejudice*. Prisoners may avoid a procedural default by offering a sufficient excuse for their failure to timely raise a claim (showing "cause") and explaining why they would be harmed if they could not belatedly assert it (showing "prejudice"). *See Gatewood v. United States*, 979 F.3d 391, 394 (6th Cir. 2020). To prove cause, prisoners often argue that their attorney provided constitutionally ineffective assistance. *See Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). This excuse requires prisoners to show both that an attorney performed incompetently and that this legal malpractice prejudiced them. *See Nagi v. United States*, 90 F.3d 130, 134–35 (6th Cir. 1996). Our cases also hold that a prisoner who makes the prejudice showing for an ineffective-assistance claim (to establish "cause" for a procedural default) generally satisfies the logically distinct "prejudice" element to avoid the procedural default. *See Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009).

Here, Wallace does not argue that his *trial* attorney provided ineffective assistance by failing to raise a *Rehaif* claim during his plea proceedings. At that time, our caselaw did not require *Rehaif*'s knowledge element, *see United States v. Conley*, 802 F. App'x 919, 922 (6th Cir. 2020), and counsel is not typically deficient for failing to anticipate a change in law, *see Malone v. United States*, 817 F. App'x 188, 191 (6th Cir. 2020) (per curiam); *cf. Chase v. MaCauley*, 971 F.3d 582, 594 (6th Cir. 2020). But Wallace suggests that the circumstances had evolved by the time of his appeal. He argues that his *appellate* attorney wrongly failed to raise this claim because the Supreme Court decided *Rehaif* before we resolved his appeal. We need

not consider whether Wallace's appellate counsel performed incompetently because Wallace cannot show prejudice.

To prove prejudice from an appellate attorney's error, prisoners must show that there is a "reasonable probability" that they would have won on the issue that the attorney failed to raise. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007). This prejudice element thus addresses the "merits" of the claim that the attorney overlooked. *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007). Here, then, we must "[o]ddly" consider the validity of Wallace's *Rehaif* claim—the very claim that he procedurally defaulted— to decide whether his appellate counsel provided ineffective assistance (and whether we may consider this claim despite that default). *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017).

Yet if Wallace had raised this *Rehaif* claim for the first time on appeal, we would have reviewed it only for plain error because he did not preserve it in the district court. *Greer*, 141 S. Ct. at 2096. Under plain-error review, we could not grant him relief unless the district court's failure to inform him of *Rehaif*'s knowledge element affected his "substantial rights[.]" *Id.* at 2097 (quoting Fed. R. Crim. P. 52(b)). That omission could not affect his substantial rights unless another "reasonable probability" existed: that he would have stood trial rather than plead guilty if the court had informed him of the element. *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)); *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hobbs*, 953 F.3d at 857.

This plain-error prejudice test is not easy to meet. Appellate courts start with a healthy dose of skepticism when evaluating any after-the-fact claim that a prisoner would not have pleaded guilty but for some error in the prisoner's plea proceeding. These courts require "contemporaneous evidence" from the time of the plea proceeding that objectively verifies such a claim. *Hobbs*, 953 F.3d at 857 (quoting *Lee*, 137 S. Ct. at 1967). This judicial skepticism only increases for a *Rehaif* claim. "Felony status is simply not the kind of thing that one forgets." *Greer*, 141 S. Ct. at 2097 (quoting *United States v. Gary*, 963 F.3d 420, 423 (4th Cir. 2020) (Wilkinson, J., concurring in denial of rehearing en banc)). So the government typically will not face much difficulty proving *Rehaif*'s knowledge element. *See Rehaif*, 139 S. Ct. at 2198. Indeed, defendants commonly stipulate at trial to their status as felons so that the jury does not

learn easy-to-prove (yet highly prejudicial) evidence about their past crimes. *See Old Chief v. United States*, 519 U.S. 172, 180–92 (1997). It is thus the rare case in which *Rehaif* will alter a defendant's calculus about whether to plead guilty or stand trial. *See Greer*, 141 S. Ct. at 2097. If anything, moreover, we should be even more skeptical of *Rehaif* claims when they are raised in a § 2255 motion rather than on direct appeal. The cause-and-prejudice test that applies in the § 2255 context establishes a "significantly higher hurdle" than the "plain-error" test that governs a forfeited appellate claim. *Frady*, 456 U.S. at 166.

And here, nothing in the "contemporaneous" record of the plea proceedings suggests that Wallace would have gone to trial if the district court had told him that the government must prove that he knew he had been convicted of a crime punishable by more than one year in prison. *Hobbs*, 953 F.3d at 857 (quoting *Lee*, 137 S. Ct. at 1967). To the contrary, the record suggests that Wallace knew that he had committed a felony (and thus that the government would have had no trouble proving *Rehaif*'s knowledge element if he stood trial). *See id.* at 857–58.

To begin with, the nature of Wallace's prior conviction goes a long way toward proving his knowledge (and *Rehaif*'s immateriality to his guilty pleas). Wallace did not plead guilty to committing a felony that one might confuse for a misdemeanor—say, damaging a mailbox, *see* 18 U.S.C. § 1705, or selling "bootlegged" movies, *see United States v. Armstead*, 524 F.3d 442, 444 (4th Cir. 2008); 18 U.S.C. § 2319(b)(1)–(2). He pleaded guilty to one of the most serious of felonies—attempted second-degree murder. As his presentence report detailed, this conviction arose from his shooting a man during a robbery. Even the most unsophisticated defendant would likely believe that attempted murder comes with significant penalties. *See United States v. Williams*, 946 F.3d 968, 974 (7th Cir. 2020); *see also United States v. Hobbs*, 24 F.4th 965, 972–73 (4th Cir. 2022). Given this commonsense inference, what defense attorney would advise a client to put the government to its proof on *Rehaif*'s knowledge-of-status element and thereby open the door for the government to tell the jury that the client had pleaded guilty to attempting a murder by shooting a fleeing robbery victim? *Cf. Old Chief*, 519 U.S. at 180–82.

By the time of his plea proceedings, moreover, Wallace indisputably knew that attempted second-degree murder was a felony. He admitted as much. During the plea colloquy in one of his federal cases, for example, the government stated that Wallace's attempted-murder

conviction made him "a convicted felon" when describing the facts underlying his felon-in-possession charge. Plea Tr., R.105, No. 3:15-cr-98, PageID 304. Wallace conceded that the government accurately described his offense. *Id.*, PageID 305. He also conceded that, if he decided to stand trial, the government could prove that he had "been convicted of a crime punishable by a term of imprisonment exceeding one year[.]" *Id.*, PageID 305–06. These admissions "strongly" suggest that Wallace knew of his felon status even earlier when he possessed the firearms and ammunition. *United States v. Ward*, 957 F.3d 691, 695 (6th Cir. 2020) (quoting *Conley*, 802 F. App'x at 923); *see United States v. Pollard*, 20 F.4th 1252, 1257 (9th Cir. 2021).

Next, while Wallace received a 10-year *suspended* sentence for his murder conviction and was released on probation, his state-court records show that he had already served three years in jail by that point. Plea Pet., R.11-2, No. 19-cv-1122, PageID 56. Wallace presumably knew that he had been detained for these three years. Further, his signed plea petition acknowledged that he would receive "jail credit" for this detention. *Id.* (Tennessee statutes require sentencing courts to award this credit. Tenn. Code Ann. § 40-23-101(c); *id.* § 40-35-211(1); *State v. Watkins*, 972 S.W.2d 703, 705 (Tenn. Crim. App. 1998).) Wallace's knowledge that he had received three years of jail credit and still faced an additional probationary period reinforces that he would have known that he had committed a crime for which he could receive more than one year's imprisonment. *See Hobbs*, 953 F.3d at 858; *see also Pollard*, 20 F.4th at 1257; *United States v. Walker*, 974 F.3d 193, 202–03 (2d Cir. 2020); *United States v. Burghardt*, 939 F.3d 397, 404 (1st Cir. 2019).

To be sure, the government introduced these state-court records in Wallace's § 2255 proceedings, not in his criminal cases. And there may be a question whether we should consider evidence that was not in the original record when asking whether Wallace has shown a reasonable probability of winning his *Rehaif* argument on direct appeal. *See Valentine*, 488 F.3d at 338. In response to similar *Rehaif* claims, however, courts have allowed the government to supplement the record on appeal with judicially noticeable court records. *See United States v. Brandon*, 965 F.3d 427, 430 n.1 (5th Cir. 2020). The government might have tried to do so here if Wallace had raised this argument at that time. *Cf. Greer*, 141 S. Ct. at 2098. Regardless, both

parties rely on these documents and neither highlights this question, so we may save it for another day.

Critically, moreover, Wallace committed his felon-in-possession offenses at issue in these federal cases only weeks after serving this lengthy detention. Given this temporal proximity, it is highly unlikely that he would have "forgotten" that he had just spent three years in jail when he decided to possess firearms and ammunition. So his case differs from others in which a defendant served a short prison stint years in the past. *Cf. United States v. Werle*, 35 F.4th 1195, 1203–04 (9th Cir. 2022); *United States v. Guzmán-Merced*, 984 F.3d 18, 20–21 (1st Cir. 2020).

Wallace's state-court records likewise reveal that he went through a standard plea process when pleading guilty to attempted murder. This process exists to ensure that defendants know the nature of the offense to which they are pleading guilty. *See Bousley*, 523 U.S. at 618. And judicial records memorializing the process exist to create a "formidable barrier" against an untimely allegation that a defendant did not understand some aspect of the offense. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1999). Wallace's records create this "barrier." In his signed petition to plead guilty, he acknowledged that his charged crime (attempted first-degree murder) was a felony punishable by between 15 and 25 years' imprisonment. Plea Pet., R.11-2, No. 19-cv-1122, PageID 55. He also agreed to plead guilty to attempted second-degree murder and to recommend to the court a suspended sentence of 10 years' imprisonment. *Id.*, PageID 55–56. But he conceded that he must "accept any punishment which the law permits the Court to impose." *Id.*, PageID 55. And again, he recognized that he would receive "jail credit" for the three years that he had just served. *Id.*, PageID 56. In the order accepting Wallace's plea, the state court also explained that it had asked Wallace questions during a plea colloquy and certified that Wallace knew the "nature" of the charge and "the maximum possible penalty provided by law" for it. Ord., R.11-2, No. 19-cv-1122, PageID 58. These plea records confirm that there is no reasonable probability that Wallace would have opted for a trial if the district court had informed him of *Rehaif*'s knowledge element. *Cf. Brandon*, 965 F.3d at 432.

We end our cause-and-prejudice discussion with a separate point. Apart from his ineffective-assistance claim, Wallace attempts to show "cause" with a "futility" argument. In a

single paragraph, he asserts that it would have been futile to raise a *Rehaif* claim in his criminal cases because the existing circuit precedent foreclosed the claim. Yet we have held that prisoners cannot invoke any "futility" exception to procedural default if the Supreme Court has yet to disagree with their claim—whether or not circuit courts have rejected it. *See Gatewood*, 979 F.3d at 395–96. At day's end, though, we need not consider his "futility" argument for proving "cause." The argument still requires him to establish "prejudice," which he cannot do.

*Actual Innocence*. Prisoners can alternatively overcome a procedural default if the failure to consider their collateral challenge would result in a "fundamental miscarriage of justice" because they are factually innocent of the crime of which they have been convicted. *McQuiggin v. Perkins*, 569 U.S. 383, 392–94 (2013) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Bousley*, 523 U.S. at 623–24. But prisoners seeking to prove this actual-innocence exception face a high bar. *See Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018). They must show that "it is more likely than not that no reasonable juror would have convicted" them if they stood trial. *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)).

Relying on *Rehaif*, Wallace alleges that he is factually innocent of his felon-in-possession offenses because he did not know that attempted murder was punishable by more than a year in prison when he possessed the guns and ammunition. He has fallen well short, however, of proving that this case is an "extraordinary" one triggering the narrow actual-innocence exception. *McQuiggin*, 569 U.S. at 393 (citation omitted). In his § 2255 motion, he did not even present "new evidence" suggesting that he lacked the required knowledge about his status as a felon. *Davis*, 900 F.3d at 326 (citation omitted). And most of the evidence in the current record suggests the opposite. Wallace thus has not shown that "it is more likely than not" that a reasonable jury would have acquitted him of his felon-in-possession offenses. *Bousley*, 523 U.S. at 623 (citation omitted).

*

Wallace has both procedural and substantive objections to our rejection of his *Rehaif* claim. As a matter of procedure, he argues that we should remand his claim to the district court rather than resolve the procedural-default issue on appeal. Admittedly, we took that path in

another case in which a district court wrongly held that *Rehaif* did not apply retroactively. *See Baker*, 848 F. App'x at 190–91. Yet our cases give us discretion to affirm a district court's decision on any ground that the record proves correct, including a ground that an appellee raised but that the district court did not reach. *See McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006); *Katt v. Dykhouse*, 983 F.2d 690, 695 (6th Cir. 1992); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) (per curiam). In *Baker*, moreover, we remanded the *Rehaif* claim in part because the petitioner had argued that the government forfeited its procedural-default defense by failing to raise it in the district court. *See* 848 F. App'x at 190. Here, by contrast, the government preserved the defense, and the parties have exhaustively briefed it. Judicial economy thus counsels in favor of considering procedural default immediately—as we have done in other cases. *See Gatewood*, 979 F.3d at 394.

Wallace responds that we should not take this course because he should get an evidentiary hearing over whether he knew he was a felon before we accept the government's procedural-default defense. But his § 2255 motion did not do enough to warrant a hearing. Section 2255 indicates: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon[.]" 28 U.S.C. § 2255(b); *see also* Rules Governing § 2255 Proceedings, Rule 4(b). Like other courts, we have interpreted this statutory language (and the accompanying procedural rules) to require a hearing only if a prisoner meets a standard analogous to the summary-judgment test by creating a legitimate dispute over a legally important fact. *See Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018); *see also, e.g.*, *United States v. Arrington*, 13 F.4th 331, 335 (3d Cir. 2021); *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009); *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007); *Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002).

Wallace's pro se § 2255 motion did not create the genuine issue of material fact required to warrant an evidentiary hearing. In the motion, he failed even to claim that he did not know he had been convicted of a crime punishable by more than a year in prison. Rather, he alleged in an unsworn statement: "I never knew that I was forbidden to possess a firearm and I never signed any paperwork dealing with such issues." Mot., R.1, No. 3:19-cv-01122, PageID 4, 11. Several

problems exist with this claim.  For one thing, *Rehaif* required him to know only that he was a felon.  Under the well-established rule that ignorance of the law is no excuse, he did not need to know that the law prohibited him from possessing firearms.  *See United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019).  For another, this unsworn statement blatantly contradicted the probation order that he signed, which explained to him that he could not possess firearms.  Prob. Ord., R.11-3, 3:19-cv-01122, PageID 61.  For a third, § 2255 requires prisoners to offer more than bare "conclusions" or "assertions of innocence" to justify an evidentiary hearing.  *Martin*, 889 F.3d at 832 (citation omitted).  Wallace provided nothing more than a bare assertion of innocence.

Turning to the merits, Wallace identifies three reasons why the record shows that he might not have believed that he had been convicted of a crime punishable by more than a year in prison.  He initially points out that he received a *suspended* sentence and was immediately released on probation.  He disregards that he had served three years in jail at the time of the sentence and that his plea petition acknowledged he would receive "jail credit" for this detention.  Plea Pet., R.11-2, No. 19-cv-1122, PageID 56.  His case thus differs from those in which a felon served only a short sentence on the prior conviction.  *Cf. Werle*, 35 F.4th at 1203–04.

Wallace next argues that he was a juvenile when he committed the state offense, and that even state judges have expressed uncertainty over when juvenile offenses count as felonies under Tennessee law.  Even if his attempted-murder charge started in juvenile court, however, the state quickly transferred it to adult court.  So no basis exists for Wallace to think he had been convicted of a juvenile offense.  *Cf. United States v. Wilson*, 853 F. App'x 297, 305–07 (10th Cir. 2021).

Wallace lastly argues that he had "nothing to lose" by going to trial because he received no benefit by pleading guilty.  Appellant's Br. 58.  Not so.  His plea triggered a three-level offense-level reduction for acceptance of responsibility.  This reduction changed his guidelines range (with the § 924(j) conviction) from a life sentence to a sentence between 360 months and life.  He likely would have lost this benefit if he stood trial.  *See United States v. Mitchell*, 836 F. App'x 276, 282 & n.41 (5th Cir. 2020) (per curiam); *see also United States v. Aguayo*, 2021 WL 4998920, at *3 (10th Cir. Oct. 28, 2021).  Wallace thus cites nothing to suggest that he

did not know he had been convicted of a felony or that he would have stood trial if the district court had reiterated *Rehaif*'s knowledge element at his plea hearings.

\* \* \*

All told, we affirm the district court's denial of relief with respect to Wallace's three felon-in-possession convictions but reverse its denial of relief with respect to his § 924(j) conviction.

Many judges have recognized the problems with the "categorical approach" for evaluating whether a defendant has committed a "crime of violence." *See United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring). It requires us to consider hypothetical conduct, not a defendant's actual conduct. *See Cradler v. United States*, 891 F.3d 659, 672 (6th Cir. 2018) (Kethledge, J., concurring). In this case, for example, Wallace's attempted-robbery conviction is not a crime of violence under § 924(j) even though the district court described his case as "one of the worst violent cases" it had seen. Sent. Tr., R.232, No. 15-cr-140, PageID 803.

Yet the categorical approach's problems do not affect a district court's balancing of the sentencing factors. Courts may not ignore reality in that distinct context. They must consider the "nature and circumstances" of the defendant's crime. 18 U.S.C. § 3553(a)(1). The brutal nature of Wallace's crime led the district court to explain that it would have still imposed a total of 30 years' imprisonment even if it had discretion to choose a concurrent sentence for his § 924(j) conviction (rather than the consecutive sentence that it thought required by the statute). *Wallace*, 772 F. App'x at 321. Wallace's presentence report also suggests that his offense level might remain the same even without the 924(j) conviction. Pre. Rep., R.92, No. 15-cr-98, PageID 237–38. And the district court likely retains discretion to choose between consecutive or concurrent sentences for Wallace's other crimes. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.2(d). But we leave these matters for remand. The district court should choose the proper remedy for the § 924(j) error—and determine whether that error should affect Wallace's total sentence—in the first instance. *Cf. United States v. Augustin*, 16 F.4th 227, 231–33 (6th Cir. 2021). We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.