RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANDREW CHARLES MARTIN,

          *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,

          *Respondent-Appellee*.

No. 16-3864

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:12-cr-00574-1; 1:15-cv-00547—Christopher A. Boyko, District Judge.

Argued: January 24, 2018

Decided and Filed: May 14, 2018

Before: GIBBONS, WHITE, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Christian J. Grostic, KUSHNER, HAMED & GROSTIC CO., LPA, Cleveland, Ohio, for Appellant. Alejandro A. Abreu, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Christian J. Grostic, KUSHNER, HAMED & GROSTIC CO., LPA, Cleveland, Ohio, for Appellant. Henry F. DeBaggis, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

## OPINION

---

JANE B. STRANCH, Circuit Judge. Andrew Martin filed a § 2255 motion to vacate his sentence, arguing that his attorneys' ineffective assistance cost him a three-point sentencing

reduction for acceptance of responsibility. The district court denied Martin's motion without holding an evidentiary hearing. Because the district court abused its discretion by declining to hold an evidentiary hearing, we **REVERSE** the district court's order and **REMAND** for further proceedings.

## I. BACKGROUND

In 2011, a probate court appointed Joy Comey administrator of the estate of her brother, George Warehime. Later that year, Andrew Martin and his co-conspirator David Simons fraudulently took ownership of Warehime's property. Martin, then a nurse, accessed Warehime's medical records without authorization so that Simons could fabricate a story about a relationship with Warehime that would make the putative property transfer look legitimate. A dispute over the house followed in probate court.

During that time, Martin attempted to recruit a patient to "take [Comey] out." The patient purported to agree, but then contacted the police. Before the Government brought federal criminal charges against Martin, Comey filed a Petition for Declaratory Judgment in probate court, naming Martin and Simons as defendants and alleging fraudulent transfer of Warehime's property. The probate court entered judgment against Martin and Simons.

On April 18, 2013, Martin pled guilty in federal court to using interstate commerce facilities with the intent to commit murder-for-hire, in violation of 18 U.S.C. § 1958; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; and obtaining individually identifiable health information, in violation of 42 U.S.C. § 1320d-6. He was represented by attorneys Edward La Rue and Christopher Thomarios. There was no plea agreement, but Martin and the Government jointly filed a Statement of Guilty Plea. The statement provided, among other things, that the Government would move for a three-level reduction in the Guidelines "[i]f the defendant continues to demonstrate that he has accepted responsibility for the offense conduct in this matter."

In the time between his guilty plea and sentencing hearing, Martin filed a Rule 60(b) motion to vacate the judgment in probate court. In the motion, Martin presented a factual narrative of the conduct underlying his civil and criminal cases that contradicted aspects of the

guilty plea statement. He denied "voluntarily or knowingly attempt[ing] to take fraudulent means or actions against" the victims, asserting that "[a]t no time did [he] attempt to defraud or maliciously act" against them. The Government brought Martin's motion to the district court's attention at the sentencing hearing, arguing that it was "inconsistent with acceptance of responsibility." La Rue argued that the 60(b) motion was out of character for Martin, that Martin filed it in a misguided attempt to mitigate the damage done to his family, and that Martin nevertheless demonstrated an acceptance of responsibility by pleading guilty and in his allocution at the sentencing hearing.

The court was unpersuaded and declined to grant any reduction for acceptance of responsibility. Without the reduction, Martin's total offense level was 32, which, given Martin's criminal history category of I, resulted in a guideline range of 121–151 months in prison. Had Martin received the three-level reduction, his guideline range would have been 87–108 months. The court imposed a sentence of 144 months, three years of supervised release, and $83,401.29 in restitution, which we affirmed on appeal. *United States v. Martin*, 572 F. App'x 334, 334 (6th Cir. 2014).

Martin then filed this pro se § 2255 motion to vacate, arguing that his trial attorneys provided ineffective assistance of counsel, in part because they advised him to file the Rule 60(b) motion in his civil case, causing him to lose the three-point reduction for acceptance of responsibility and therefore receive a longer prison sentence. Martin alleged that his counsel, Thomarios, insisted that Martin include language in the 60(b) motion that was contradictory to his guilty plea statement, and, when Martin asked whether it would affect his criminal case, his attorneys "assured him it wouldn't." In support of his § 2255 motion, Martin attached his affidavit and those of his wife and mother and requested an evidentiary hearing and the appointment of counsel.

The Government filed a response in opposition to Martin's § 2255 motion, attaching affidavits from La Rue and Thomarios; the fee agreement between Martin and Thomarios relating to the civil case; a fee agreement letter from Sonkin & Koberna, L.P.A., a different law firm involved in Martin's civil representation; a letter from Thomarios to Martin's wife; a billing statement from Thomarios for the civil representation; and email correspondence between the

Government and Donald Gallick, a lawyer who represented Martin in his criminal case before La Rue and Thomarios were hired. In his affidavit, Thomarios denied advising Martin to file the 60(b) motion, reviewing the motion, advising Martin to include language contradicting the guilty plea, or advising him that it would not have an effect on his criminal sentencing. Thomarios also denied serving as Martin's counsel of record in the civil case, but acknowledged providing limited representation, including facilitating communication between Martin and Sonkin & Koberna and advising Martin with respect to the research conducted by that law firm. Thomarios's fee agreement letter to Martin and his billing statement, however, indicated that Thomarios billed $4,255.80 for 23.4 hours of work relating to the civil case. The work included multiple meetings with Martin, conversations with his wife, and "[r]esearch of 60B motions." Sonkin & Koberna's fee agreement letter indicated that the firm would provide limited representation in the civil case and would not be filing an appearance as counsel for Martin.

Martin filed a reply, alleging inconsistencies in the Government's response and supporting documents and attaching, among other things, a supplemental affidavit from himself and a printout of the civil case docket sheet with "[f]ile motion to set aside judgment" and "motion for reconsideration" handwritten on the bottom of the last page. Martin alleged that Thomarios gave him the printout with those instructions.

The district court denied Martin's § 2255 motion without a hearing, finding that "[Martin's] claim that counsel advised him to file the Rule 60(b) Motion is not credible." The court also stated that "[t]he attorneys representing [Martin] in this criminal case did not represent him in the civil case."

Martin then filed a Rule 59(e) motion to alter or amend judgment, arguing that the district court had overlooked Sixth Circuit precedent in denying his § 2255 motion without holding an evidentiary hearing despite the existence of factual disputes. The court denied the motion, stating that "[a]lthough [Martin] asserts that there are facts in dispute, [he] offers no proof beyond mere self-serving allegations that either counsel was ineffective." Martin sought and was granted a certificate of appealability from this court on the questions "whether Thomarios rendered ineffective assistance of counsel in relation to Martin's decision to file a Rule 60(b) motion" and "whether the district court erred in failing to conduct an evidentiary hearing on this

issue." *Martin v. United States*, No. 16-3864 (6th Cir. Feb. 28, 2017) (order). We also appointed counsel for the appeal.

Martin argues that the district court erred in denying relief without holding an evidentiary hearing, and that the case should be reassigned to a different judge on remand. The Government does not contest that—if true—Martin's allegations would amount to ineffective assistance of counsel; it argues that the district court properly denied Martin's § 2255 motion without an evidentiary hearing because Martin's allegations are inherently incredible and are contradicted by the record.

## II.  ANALYSIS

### A.      Evidentiary Hearing

A district court's refusal to hold an evidentiary hearing on a § 2255 motion is reviewed under the abuse-of-discretion standard. *See Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013). "A court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard, or when we are firmly convinced that the trial court committed a clear error of judgment." *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015) (citation and internal quotation marks omitted); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

An evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see also* 28 U.S.C. § 2255(b). The burden "for establishing an entitlement to an evidentiary hearing is relatively light," and "[w]here there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). A petitioner's "mere assertion of his innocence," without more, does not entitle him to an evidentiary hearing. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007); *see also Turner*, 183 F.3d at 477. But when presented with factual allegations, "a district court may

only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Arredondo*, 178 F.3d at 782). "[W]hen a defendant presents an affidavit containing a factual narrative of the events that is neither contradicted by the record nor inherently incredible and the government offers nothing more than contrary representations to contradict it, the defendant is entitled to an evidentiary hearing." *Huff*, 734 F.3d at 607 (citation and internal quotation marks omitted).

Martin presents more than "mere assertions of innocence," *Valentine*, 488 F.3d at 333, or conclusions, *MacLloyd*, 684 F. App'x at 559. His § 2255 motion contains factual allegations about the deficiencies of his attorneys' advice and assistance relating to the 60(b) motion in his civil case. Martin alleges that Thomarios agreed to advise him on the civil matter and that Martin paid Thomarios a $4000 retainer. Martin further asserts that between March and May of 2013, Thomarios advised him to file a 60(b) motion in his civil case, reviewed his draft motion, insisted that he include language that contradicted his guilty plea, and assured him that it would not affect his criminal case or sentencing. In support of these allegations, Martin submitted affidavits from himself and his wife,[1] along with a copy of the civil docket sheet with notes regarding the filing of motions. Martin also notes that Thomarios's billing statements, which were attached to the Government's response, reflect substantial work done on the civil case, including "[r]esearch of 60B motions." Martin claims that he would not have filed the civil 60(b) motion without his attorney's "misadvice" and, therefore, would have received a three-point reduction for acceptance of responsibility—and likely a shorter prison sentence.

Because Martin has presented factual allegations that support his ineffectiveness claim, he is entitled to an evidentiary hearing unless the allegations cannot be accepted as true because "they are contradicted by the record" or are "inherently incredible." *MacLloyd*, 684 F. App'x at 559 (citation omitted). In denying Martin's § 2255 motion, the district court found that:

---

[1] In the affidavit, Martin's wife asserted that Thomarios called her "[b]efore sentencing" and told her about the research he was conducting in Martin's civil case. She said Thomarios told her that he was "advising [Martin] to file a Motion to Vacate to get the Probate judgment overturned" and "that filing the Motion to Vacate in the Probate case would not affect [Martin's] criminal case or sentence."

> [Martin's] claim that counsel advised him to file the Rule 60(b) Motion is not credible. The attorneys representing him in this criminal case did not represent him in the civil case. [Martin] was referred to a law firm with experience in civil matters. The Court finds this allegation of ineffective assistance of counsel to be without merit.

In denying Martin's Rule 59(e) motion to alter or amend the court's denial of the § 2255 motion, the court added that "[a]lthough [Martin] asserts that there are facts in dispute, [he] offers no proof beyond mere self-serving allegations that either counsel was ineffective." These statements rest on critical misapprehensions of the evidence presented and the governing legal standard.

First, the conclusion that neither of Martin's criminal defense attorneys provided representation to Martin in the civil case is not supported by the evidence. While Thomarios was not counsel of record in Martin's civil case, Thomarios's affidavit, fee agreement letter, and billing statement—all submitted by the Government in its opposition to Martin's § 2255 motion—reveal that Thomarios did provide some legal representation to Martin in his civil case. Though Martin was referred to another law firm, that firm, like Thomarios, provided only limited representation to Martin in the civil case and did not enter an appearance.

Second, the court's statement that Martin offered no proof beyond "mere self-serving allegations" fails to acknowledge that Martin did, in fact, support his allegations with more than his own words, and appears to overlook our governing precedent holding that a "self-serving" affidavit is not inherently incredible. *See Pola v. United States*, 778 F.3d 525, 535 (6th Cir. 2015) ("[T]he district court appears to find [the petitioner's] credibility lacking because the affidavit is 'self-serving.' But an affidavit is not incredible just because the asserted facts favor the affiant."); *see also MacLloyd*, 684 F. App'x at 562 ("In this circuit, defendant's statements alone are sufficient to support a finding that he would have accepted [a plea] offer."); *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (noting that this court does not require that petitioners supply "objective" evidence beyond their own assertions that they would have accepted a plea offer (quoting *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003))). The district court's conclusion that Martin's claim was not credible was based on both legal and factual errors.

On appeal, the Government argues that Martin's allegations are both contradicted by the record and inherently incredible, and thus that it was proper for the district court to deny his § 2255 motion without a hearing. The Government points to the sentencing hearing, specifically La Rue's statement that "[he] d[idn]'t have any good explanation for why [Martin] would do what he's doing here . . . except to say what he told me which was [that he] was trying to somehow soften the blow against his family." The Government also relies on Martin's failure to "object" to these characterizations or to the Presentence Report, or to otherwise inform the court that he had filed the 60(b) motion because of his attorneys' advice and assurances.

The record from Martin's underlying criminal case is unlikely to conclusively show whether he is entitled to relief because Martin's allegations relate largely to "purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light." *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962); *see also MacLloyd*, 684 F. App'x at 561. What Martin and his attorneys said or did not say during his sentencing hearing does not and cannot definitively establish what they did or did not say weeks earlier in the time leading up to the filing of Martin's 60(b) motion.

To the extent that the sentencing hearing does cast light on Martin's allegations, it does not clearly contradict them. Martin's decision not to object to the Presentence Report is logical because the PSR included the three-point reduction for acceptance of responsibility. Martin was not asked whether he had been advised by his attorneys to file the 60(b) motion and, as he argues, had no reason to know at that time that such reliance could be legally relevant. Furthermore, it is unusual—and generally discouraged—for a represented defendant to make objections on his own, to make his own arguments outside allocution, or to otherwise interrupt the judge or lawyers at his sentencing hearing. Martin's failure to independently object may simply reflect a client's reasonable decision to rely on his attorneys and follow typical court procedures.

The Government further argues that Martin's allegations are inherently incredible, both because the timeline of events undermines them, and because Martin continued to deny responsibility for the fraud and health-information charges in his post-conviction challenge. According to Thomarios's billing documents, he conducted 60(b) research in March of 2013,

met with Martin about the civil case several times in March and April, and ceased representing Martin in the civil case by May 1. On April 10, 2013, the district court scheduled Martin's change of plea hearing for April 18. Martin and Thomarios's April 15 meeting occurred before Martin entered his guilty plea, but after Thomarios knew Martin planned to plead guilty, and almost certainly after plea negotiations with the Government had begun. Thomarios continued to represent Martin in the criminal case through sentencing, which presumably included additional attorney-client meetings. While the timeline of events may not alone prove Martin's claim that Thomarios advised him regarding the 60(b) motion, it does not clearly contradict it or make it inherently incredible.

Finally, the Government contends that Martin's post-conviction denial of responsibility renders incredible his assertion that he filed the 60(b) motion following counsel's advice, encouragement, and assurances. In his pro se § 2255 pleadings, Martin denied conspiring to commit wire fraud and illegally obtaining health information for profit and set forth a factual narrative that contradicted his guilty plea. The Government argues that this renders Martin's claim that he would not have filed the 60(b) motion in his civil case without the advice of his attorney incredible.

Because "[r]easons other than the fact that he is guilty may induce a defendant to so plead," *North Carolina v. Alford*, 400 U.S. 25, 33 (1970) (citation omitted), a petitioner's "repeated declarations of innocence do not prove . . . that he would not have accepted a guilty plea," *Griffin*, 330 F.3d at 738. *Valentine* makes this clear: "although the government implies that [the petitioner's] protestations of innocence discredit his argument that he was willing to accept a plea, this circuit has rejected this reasoning in the past." 488 F.3d at 333.

Martin's decision to plead guilty was likely informed by multiple factors independent of his own belief about his guilt or innocence. La Rue's affidavit supports this conclusion:

> Mr. Martin did assert that he was coerced into many of the actions he later took in furtherance of the conspiracy . . . . Mr. Martin, having been advised of our belief, as his lawyers, that [our inability to corroborate the alleged coercion or threats] would place the entire burden on [Martin] to convince the jury of these threats, chose voluntarily to enter a plea of guilty to all counts. . . . [A]s [Martin] well knew at the time, as a matter of the United States Sentencing Guidelines, because

both of the additional charges brought by *Information* were nine (9) levels or more below the sentencing guidelines range for the Conspiracy to Commit Murder for Hire, the effect of this plea was that no additional time was to be assessed per U.S.S.G. Sec. 3D1.4(c).

In other words, Martin decided to plead guilty to the fraud and health-information charges in part due to anticipated difficulties in proof and because he believed that plea would most likely not increase his overall sentencing exposure. Martin's statements at the sentencing hearing likewise lend support to his claim. Despite apparent misgivings about the fraud and health-information charges, when given the opportunity to speak, Martin was contrite and expressed remorse for his criminal conduct, stating:

> No words can explain my reprehensible actions, nor would I ever try to minimize what I've done. More than anything, I would like to make amends and do what I can to make things right. The best that I can do is to acknowledge my wrongdoings, accept responsibility for my actions, pray for forgiveness, and give my heart over to God.

In short, Martin's repeated "protestations" may certainly be considered by the district court, *Smith*, 348 F.3d at 552, but they do not render inherently incredible his claim that he would not have voiced them in his 60(b) motion absent attorney advice.

In sum, the statements and omissions at sentencing, the timeline, and Martin's pro se pleadings do not "conclusively show" that Martin is entitled to no relief. 28 U.S.C. § 2255(b); *see also MacLloyd*, 684 F. App'x at 562 ("The fact that the petitioner's allegations may be 'improbable' is insufficient to forego a hearing." (quoting *Machibroda*, 368 U.S. at 495)). Martin and the Government present very different accounts of what led to Martin's filing of the 60(b) motion in his civil case. The "motion and the files and records of the case," 28 U.S.C. § 2255(b), "contain[] facts supporting both arguments, which necessitates an evidentiary hearing," *Faison v. United States*, 650 F. App'x 881, 886 (6th Cir. 2016). There exists a "factual dispute," and, as a result, the district court abused its discretion by declining to hold "an evidentiary hearing to determine the truth of [Martin's] claims." *Id.* at 885 (quoting *Turner*, 183 F.3d at 477).

B.        **Reassignment on Remand**

Martin also argues that his case should be reassigned to a different judge on remand because the district court "prematurely and improperly" decided the credibility of the parties, which will be an important issue at the evidentiary hearing.

We have the authority to reassign a case on remand under 28 U.S.C. § 2106. *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003). Reassignment, however, is an "extraordinary power" that should be used "infrequently and with the greatest reluctance." *Id.* (quoting *Armco, Inc. v. United Steelworkers of America, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002)). In assessing whether reassignment is appropriate, we consider:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.*

That a district court erred by, for example, mischaracterizing evidence does not necessarily warrant reassignment. *See id.* at 501–02 ("We do not think that the district court's mischaracterization of the evidence is grounds for reassignment. If we reassigned the case every time a district court judge misconstrued some evidence, reassignment would surely cease to be 'an extraordinary power . . . rarely invoked.'" (quoting *Armco*, 280 F.3d at 683)); *see also Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006). Reassignment is not required where "there is no evidence in the record indicating that the district judge will have difficulty conducting [the proceedings upon remand]." *United States v. Garcia-Robles*, 640 F.3d 159, 168 (6th Cir. 2011).

In contrast, we have found it necessary to exercise our reassignment power when the district court has indicated an unwillingness or inability to "heed the guidance of this Court" on remand. *United States v. Robinson*, 778 F.3d 515, 524–25 (6th Cir. 2015); *see also Rorrer v. City of Stow*, 743 F.3d 1025, 1050 (6th Cir. 2014) (reassigning where the district court's statements and "questionably imposed" one-sided discovery order suggested that it may have

substantial difficulty putting out of mind previously expressed views, and reassignment would protect the appearance of justice).  Other courts have found reassignment necessary where the district court "rendered a visceral judgment on [the] appellant's personal credibility." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007); *see also Earp v. Cullen*, 623 F.3d 1065, 1072 (9th Cir. 2010).

At bottom, the district court's conclusion that Martin's claim was not credible was based on its determinations that Martin's allegations were self-serving and that the record did not support them.  The first finding is partially true, but not legally decisive; the second is a misapprehension that this opinion has cured.  There is no indication that the district court's conclusion was based on "a visceral judgment on [Martin's] personal credibility." *Shcherbakovskiy*, 490 F.3d at 142.  We are therefore "satisfied that the judge will re-visit the matter with a completely open mind." *Garcia-Robles*, 640 F.3d at 168 (brackets and citation omitted).  The record does not indicate that this is "an extraordinary case that warrants reassignment." *Howe v. City of Akron*, 801 F.3d 718, 756 (6th Cir. 2015).

## III.  CONCLUSION

Because Martin has met the relatively light burden for establishing an entitlement to an evidentiary hearing, the district court abused its discretion by failing to hold a hearing. We therefore **REVERSE** the district court's denial of Martin's 28 U.S.C. § 2255 motion and **REMAND** this case for an evidentiary hearing and proceedings in accordance with this opinion.