NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0233n.06

No. 22-1497

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 23, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SHAID URIEL JUARICO-CERVANTES, | |
| Petitioner-Appellant, | |
| v. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | |
| Respondent-Appellee. | OPINION |

BEFORE: CLAY, McKEAGUE, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner, Shaid Juarico-Cervantes, appeals the district court's denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Juarico-Cervantes pleaded guilty to possession of firearms and ammunition by a person "illegally or unlawfully in the United States" in violation of 18 U.S.C. §§ 924(a)(2) and 922(g)(5)(A). For the reasons set forth below, this Court **VACATES** the district court's order denying Petitioner's § 2255 motion and **REMANDS** for an evidentiary hearing consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

Shaid Juarico-Cervantes is a Deferred Action for Childhood Arrivals ("DACA") recipient. In 2005, at the age of seven, his parents brought him to live in the United States from Mexico. He has resided in Michigan since that time. On January 4, 2018, after his home was shot at in a drive-by shooting, Juarico-Cervantes went to On Target, a firearms dealer in Kalamazoo, Michigan, to buy a Zastava assault rifle. As part of the purchase process, Juarico-Cervantes was required to

complete background check paperwork.  He filled out the background check form, providing his name, address, and social security number.  Because he wrote his social security number in the section of the form designated for his alien registration number, the background check was delayed.  Even though the background check was delayed, Juarico-Cervantes was allowed to purchase and take possession of the firearm, less than a week later, on January 10, 2018.

Two days later, On Target received the results of the background check indicating that Juarico-Cervantes was prohibited from purchasing a firearm.  On Target notified the Bureau of Alcohol, Tobacco, Firearms, and Explosives that Juarico-Cervantes already possessed the gun.  Law enforcement agents visited Juarico-Cervantes' residence the next month to retrieve the gun he had purchased from On Target.  Juarico-Cervantes was cooperative and permitted the agents to enter the home and retrieve the firearm.  When the agents found the firearm, they also noticed other guns in plain view.  The agents secured a search warrant for the residence and located five other guns, two of which were reported stolen and one which had an obliterated serial number.

### B.  Procedural History

In May 2018, Juarico-Cervantes was charged with one count of knowingly making a false written statement to procure a firearm in violation of 18 U.S.C. § 922(a)(6), one count of possessing firearms and ammunition in violation of 18 U.S.C. § 922(g)(5)(A) and § 924(a)(2), and one count of knowingly possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).  Juarico-Cervantes initially pleaded not guilty to all three counts, but he later pleaded guilty to count two of the indictment, in exchange for dismissal of counts one and three.  Juarico-Cervantes did not waive his right to appeal as part of his plea agreement.  Although Juarico-Cervantes' plea agreement stipulated that he knew that he possessed the firearms listed in the indictment, it contained no stipulation that he was aware of his status as a person illegally or

unlawfully in the United States when he possessed the firearms. During the change of plea hearing, the district court questioned Juarico-Cervantes about the offense in the indictment, and he admitted that he had entered the United States illegally in 2005, that he had possessed all of the items listed in count two of the indictment, and that he knew he was not permitted to possess all of the items listed in the indictment.

During the sentencing hearing, Juarico-Cervantes' attorney, Becket Jones, provided additional context about the facts precipitating count two of the indictment. Jones told the court that Juarico-Cervantes had not provided any false information in the background check paperwork and that the ATF found it "very easy" to find Juarico-Cervantes and locate the firearm he had purchased. Tr. Sentencing Hr'g, R. 50, Page ID #255–57. Jones also noted that Juarico-Cervantes purchased the gun from a licensed dealer and "believed that he had Second Amendment rights" even though he "should not have believed that." *Id.* at Page ID #257. The court sentenced Juarico-Cervantes to a term of 63 months of imprisonment and three years of supervised release. In making that determination, the district court specifically acknowledged that Juarico-Cervantes might not have been aware that DACA recipients were not allowed to possess guns. The district court stated:

> His purchase of the firearm obviously was illegal. He was on DACA status while he was doing this. Apparently he didn't check with his lawyer. He should have checked with his lawyer to find out whether he was eligible to possess a firearm or not. He wasn't. And accordingly, his purchase, albeit in his own name, indicates that he was being rather open about it. He says he did that as a result of a drive-by shooting at his house. I have no reason to disbelieve that.

*Id.* at Page ID # 263–64.

The court entered judgment on November 2, 2018. Juarico-Cervantes did not appeal his sentence, and the time for him to file an appeal expired 14 days later. *See* Fed. R. App. P. 4(b)(1). On June 21, 2019, the Supreme Court decided *Rehaif v. United States*, holding that 18 U.S.C. § 924(a)(2) requires proof that a defendant knew he belonged to the relevant category of persons

barred from possessing a firearm specified in 18 U.S.C. § 924(g), in that case an alien who is illegally or unlawfully in the United States. 139 S. Ct. 2191, 2194 (2019). On July 13, 2020, Juarico-Cervantes filed a *pro se* motion to vacate his conviction pursuant to 28 U.S.C. § 2255, arguing that the court should apply *Rehaif* retroactively and find that his conviction was no longer valid. He also made a claim for ineffective assistance of counsel, arguing that his attorney failed to file an appeal that would have permitted him to raise his *Rehaif* claim on direct appeal. Juarico-Cervantes obtained new counsel to assist with the § 2255 petition, and his new attorney filed a reply which included a request for an evidentiary hearing.

The district court denied Juarico-Cervantes' motion, reasoning that his admissions at his change of plea hearing—that he had entered the United States illegally and knew he was not permitted to possess the firearms listed in the indictment—were sufficient evidence that he was fully aware of his status, and that there was consequently no *Rehaif* violation. In a footnote, the district court also acknowledged that sufficient evidence existed in the record that "reasonable jurists could reach the opposite conclusion," given that Juarico-Cervantes had tried to purchase one of the firearms legally and his counsel's statement at sentencing that Juarico-Cervantes thought he had Second Amendment rights. Order on Mot. to Vacate, R. 53, Page ID #308 n.1.

The district court also addressed Juarico-Cervantes' ineffective assistance of counsel claim, determining that he could not show he was prejudiced by his attorney's conduct because he failed to show that he would have filed a timely appeal. First, the district court reasoned that that the petition for writ of certiorari in *Rehaif* was not granted until two months after the expiration of Juarico-Cervantes' appeal deadline. Second, the district court determined that Juarico-Cervantes was not prejudiced by his lawyer's failure to appeal because he failed to present evidence that he would not have pleaded guilty even if the district court had instructed him on the *mens rea* element

of his offense. The district court denied Juarico-Cervantes's request for an evidentiary hearing, determining that no hearing was necessary because "Petitioner's arguments are contrary to law." *Id*. at Page ID #314. Petitioner timely appealed the district court's order denying his motion to vacate.

## II. STANDARD OF REVIEW

When reviewing a district court's denial of a motion to vacate pursuant to § 2255, this Court reviews conclusions of law *de novo* and factual findings for clear error. *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (citing *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000)). This Court reviews for abuse of discretion a district court's decision to refuse to hold an evidentiary hearing on a § 2255 motion. *Martin v. United States*, 889 F.3d 827, 831 (6th Cir. 2018). "A court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard, or when we are firmly convinced that the trial court committed a clear error of judgment." *Id.* at 831 (quoting *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015)).

## III. ANALYSIS

On appeal, Juarico-Cervantes requests that we reverse the district court's order denying his motion to vacate his conviction and sentence. He argues that: (1) the Supreme Court's decision in *Rehaif* should be applied retroactively to vacate his conviction since the district court failed to instruct him that knowledge of his status as an alien illegally and unlawfully in the United States was an element of the crime (his "retroactive *Rehaif* claim"), (2) his attorney provided ineffective assistance of counsel that caused him not to appeal the judgment in his case, and (3) the district court should have permitted him an evidentiary hearing on his claims. The government concedes

that *Rehaif* applies retroactively on collateral review,[1] and that Petitioner's counsel acted deficiently in not consulting with him about the possibility of filing an appeal after he expressed interest in doing so.

Ordinarily, where a defendant fails to raise a *Rehaif* claim on direct appeal, the defendant procedurally defaults the claim and can only raise the claim on collateral review if he can show "cause" and "prejudice" for his failure to bring that claim on direct appeal. *Bousley v. United States*, 523 U.S. 614, 622 (1998). One way of overcoming a procedural default is by bringing an ineffective assistance of appellate counsel claim premised on the failure of appellate counsel to bring the *Rehaif* claim. *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) ("To prove cause, prisoners often argue that their attorney provided constitutionally ineffective assistance . . . . [A] prisoner who makes the prejudice showing for an ineffective-assistance claim (to establish 'cause' for a procedural default) generally satisfies the logically distinct 'prejudice' element to avoid the procedural default."). Procedural default is an affirmative defense that the government must raise, or else it is forfeited. *See Vanwinkle v. United States*, 645 F.3d 365, 370 (6th Cir. 2011) (citing *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)).

Juarico-Cervantes brought both a merits claim that *Rehaif* should be applied retroactively to vacate his guilty plea and sentence and an ineffective assistance of counsel claim premised on

---

[1] This Circuit, in two unpublished decisions, has determined that *Rehaif* applies retroactively on collateral review. *See Baker v. United States*, 848 F. App'x 188, 189 (6th Cir. 2021); *Kelley v. United States*, No. 20-5448, 2021 WL 2373896, at *2 (6th Cir. Feb. 5, 2021) ("Thus, just as *Bailey* and *Burrage* announced new substantive rules that apply retroactively to cases on collateral review, so did *Rehaif*"); *see also Wallace v. United States*, 43 F.4th 595, 606 (6th Cir. 2022) (implicitly recognizing that *Rehaif* applies retroactively by citing *Baker* decision and noting that the district court in that case "wrongly held that *Rehaif* did not apply retroactively").

his counsel's failure to raise the *Rehaif* claim on appeal.[2]  Because the prejudice prong of Petitioner's ineffective assistance of counsel claim requires the same showing as his *Rehaif* merits claim,[3] Plaintiff can only succeed with his § 2255 petition if he can show he would not have pleaded guilty if the court had properly instructed him on the knowledge of status element pursuant to *Rehaif*.  Accordingly, we will first address Petitioner's merits claim that a *Rehaif* violation occurred.  Second, although the government concedes that it has forfeited any argument that defendant has procedurally defaulted his *Rehaif* claim,[4] we will nonetheless address the sole remaining question in Petitioner's ineffective assistance of counsel claim—whether he would have pleaded guilty—in case procedural default is later raised.

---

[2] In most cases, a defendant raising a standalone ineffective assistance of counsel claim premised on his counsel's failure to file an appeal must only demonstrate for the prejudice prong that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000).  This is because standalone ineffective assistance of counsel claims seeks only to vacate the sentence and permit a direct appeal. *See Johnson v. United States*, 146 Fed. App'x 4, 5 (6th Cir. 2005); *Rosinski v. United States*, 459 F.2d 59, 59 (6th Cir. 1972).  In this case, however, Petitioner seeks to vacate his conviction, and is using his ineffective assistance claim as a means of excusing the procedural default of his *Rehaif* claim.  For these types of claims, the Petitioner must also show a probability of success on appeal. *See Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984)).

[3] To succeed on his retroactive *Rehaif* claim, Petitioner must satisfy plain error review, which involves demonstrating that there is a reasonable probability that he would not have pleaded guilty if he had known about *Rehaif's* requirement that he know his prohibited status. *Wallace v. United States*, 43 F.4th 595, 603 (6th Cir. 2022).  And, as discussed, when analyzing whether Petitioner in this case was prejudiced by his counsel's ineffective assistance, we must also examine the merits of the issue that defendant's counsel failed to appeal and decide whether the defendant had a reasonable probability of prevailing on appeal. *Id.*

[4] When the government fails to raise procedural default, as it did here, it forfeits the right to defend on that ground. *Cartwright v. United States*, 12 F.4th 572, 580 (6th Cir. 2021).  An appeals court may raise the issue of a defendant's procedural default, but it is not obligated to do so. *See id.; see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (citing *Trest v. Cain*, 522 U.S. 87, 118 S. Ct. 478, 480 (1997)).  We have previously expressed disapproval of a court's "*sua sponte* raising of procedural default issues as a matter of course." *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  Accordingly, we decline to consider whether Juarico-Cervantes has procedurally defaulted the merits of his *Rehaif* claim on collateral review.

We conclude that the Petitioner has created a factual dispute on the key issues in his case, meriting an evidentiary hearing on his claims.

### 1.  Retroactive Application of *Rehaif*

We review Petitioner's unpreserved *Rehaif* claim for plain error.  *See Wallace*, 43 F.4th at 603 (reviewing unpreserved *Rehaif* claim for plain error in a § 2255 petition where defendant's appellate attorney did not raise the claim during his direct appeal because the *Rehaif* certiorari petition had not yet been granted); *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (reviewing unpreserved *Rehaif* violation for plain error on direct appeal).  A defendant is only eligible for relief from a plain error where that plain error affects the defendant's "substantial rights," meaning that there must have been a "reasonable probability" that defendant "would have stood trial rather than plead guilty if the court had informed him of the element." *Wallace*, 43 F.4th at 603 (quoting *Greer*, 141 S. Ct. at 2097).

In § 2255 cases, an evidentiary hearing is typically required "unless the record conclusively shows that the petitioner is entitled to no relief." *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (quoting *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)).  The defendant's burden for showing entitlement to an evidentiary hearing is "relatively light," particularly where there is a factual dispute. *Martin*, 889 F.3d at 832 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  "If a habeas petitioner presents a factual dispute, then 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015) (quoting *Huff v. United States,* 734 F.3d 600, 607 (6th Cir. 2013)).  A district court may only forgo a hearing when a defendant's allegations are "contradicted by the record, inherently incredible, or conclusions rather

than statements of fact." *Martin*, 889 F.3d at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017)).

In *Rehaif*, the Supreme Court considered the case of a defendant, Hamid Rehaif, who had entered the United States on a student visa to attend university. 139 S. Ct. at 2194. Rehaif received poor grades, was dismissed from the university, and was told his immigration status would be terminated unless he transferred to another university. *Id.* After his dismissal, Rehaif visited a firing range and shot a firearm. *Id.* The government learned of his visit and charged him with possessing a firearm as an alien unlawfully in the United States in violation of § 922(g)(5)(A) and § 924(a)(2). *Id.* He stood trial and was found guilty after the trial judge instructed the jury that the government did not need to prove that Rehaif knew he was illegally in the United States. *Id.* The Supreme Court analyzed the statute and determined that the statutory text required application of the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)).

That presumption required the government to prove that the defendant subjectively knew of his status as an alien illegally in the United States, noting that a "defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." *Id.* at 2198. The government may prove knowledge of status through circumstantial evidence. *See id.* (citing *Staples v. United States*, 511 U.S. 600, 615 n. 11 (1994)).

As this Circuit has previously determined, "*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware

of this provision of the United States Code." *United States v. Bowens*, 938 F.3d 790, 797–98 (6th Cir. 2019). However, the maxim that ignorance of the law is no excuse "normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct.'" *Rehaif*, 139 S. Ct. at 2198 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(a), p. 575 (1986)). This maxim does not apply "where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." *Id*. (quoting LaFave at p. 575). Here, Juarico-Cervantes claims he had a "mistaken impression" about the legal effect of a collateral matter— that DACA status provided him with legal status in the United States and Second Amendment rights. That mistaken impression likely resulted in his not understanding the "full significance of his conduct" in attempting to purchase a firearm and thereby negated an essential element of the firearm offense he was charged with, namely knowledge of his status as one "illegally or unlawfully in the United States." *Id.*

Petitioner argues that evidence in the record shows that he did not know that he was illegally or unlawfully in the United States, "demonstrat[ing] he would not have pled guilty to this offense if he had been instructed about the knowledge-of-status element." Pet'r's Br. at 22. The district court and the government relied on Juarico-Cervantes' responses to the district court's questions during the plea hearing as conclusive evidence that he did know that he was an alien illegally or unlawfully in the United States. The district court cited the Supreme Court's decision in *Greer* for the proposition that felons face an uphill battle in establishing that they did not know of their status because "[i]f a person is a felon, he ordinarily knows he is a felon." Op. and Order, R. 53, Page ID #314 (citing 141 S. Ct. at 2097). The district court then extended that inference to

the Petitioner and reasoned that "Petitioner admitted that he did not enter the country legally" and then concluded that "if a person enters the United States illegally, as Petitioner did, he ordinarily knows he is an illegal alien." Op. and Order, R. 53, Page ID #314. The district court concluded from this inference that "[t]he record supports the conclusion that Petitioner knew he was an illegal immigrant, and even if the Court had instructed Petitioner on the mens rea element of his offense, Petitioner has failed to show that he would not have pled guilty." *Id.*

The district court's inference that a person who admitted he entered the country unlawfully automatically knows he is an "illegal alien" is unsupported by evidence in the record. Not only does this inference ignore the possibility that someone who has entered the country illegally may nonetheless obtain lawful status after the fact, it also ignores the contemporaneous evidence available to the district court that Juarico-Cervantes believed that DACA recipients were lawfully present in the United States and had Second Amendment rights.

The most convincing fact supporting Juarico-Cervantes' contention that he was unaware that he was illegally or unlawfully in the country at the time of his possession of the firearms, and thus that he would not have pled guilty had he known of the *Rehaif* knowledge requirement, are his statements at sentencing that he believed he had Second Amendment rights. Furthermore, at the time of the offense he provided all his own personal information in his application for a firearm and did not attempt to obtain the weapon in a surreptitious manner. His behavior strongly implies that he thought he was behaving in a manner consistent with the law and that his DACA status conferred him with lawful status and rights akin to those of a citizen.[5] And as a DACA recipient,

---

[5] For this reason, the district court's suggestion that Juarico-Cervantes should have "check[ed] with his lawyer" before purchasing the firearm, Tr. Sentencing Hr'g, R. 50, at Page ID #234–64, is an unreasonable expectation. People do not tend to "check with [their] lawyer" before doing things that they believe are lawful.

he had been issued a social security number which he used in his application to purchase a firearm.[6]

Evidence that a defendant was not actually guilty of an offense is, logically, evidence (though not conclusive evidence) that the defendant would not have pled guilty to that offense. *Cf. Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) ("Humphress's assertions of his innocence at trial and during the magistrate's evidentiary hearing lend additional support to the district court's conclusion that Humphress would not have pled guilty."). The record therefore presents a factual dispute on the question of whether Petitioner would have pled guilty.

In cases such as this one—which turn on a key factual question not settled by the record as it stands—the proper course is to hold an evidentiary hearing. *See Campbell*, 686 F.3d at 357–59 ("Because the resolution of this factual issue is pivotal to Campbell's claim for relief, the district court must conduct an evidentiary hearing. . . ."); *Martin*, 889 F.3d at 833 (determining that petitioner was entitled to a hearing on his petition because he had provided factual allegations beyond mere assertions of innocence and noting that in this Circuit even a "'self-serving' affidavit is not inherently incredible.") (quoting *Pola*, 778 F.3d at 535 (6th Cir. 2015)). The district court did not find Juarico-Cervantes' factual allegations "inherently incredible" or "contradicted by the record" and in fact expressly stated it had no reason to disbelieve him. Indeed, the district court acknowledged that "reasonable jurists—given Petitioner's alleged attempt to purchase firearms legally—could find this Court's conclusion to be debatable or wrong." R. 53 at Page ID #309. As this Circuit has previously noted, "[t]he fact that the petitioner's allegations may be 'improbable' is insufficient to forego a hearing." *MacLloyd*, 684 F. App'x at 562 (quoting *Machibroda v. United States*, 368 U.S. 487, 492(1962)) (determining that defendant was entitled to evidentiary hearing

---

[6] *See e.g.,* Application for a Social Security Card, SSA.gov, https://www.ssa.gov/forms/ss-5.pdf (noting that to apply for a social security card, an applicant must have "current lawful, work-authorized immigration status.")

on § 2255 petition). Thus, Petitioner was entitled to an evidentiary hearing on the question of whether he would have pled guilty had he known of *Rehaif*'s knowledge requirement. *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (determining that district court abused its discretion by denying evidentiary hearing on § 2255 motion where defendant presented a factual narrative of events that was not incredible or contradicted).

The government makes several other arguments to support its contention that the outcome of this case would have been the same even had the district court instructed Juarico-Cervantes on the *mens rea* element. First, the government argues that Juarico-Cervantes would not have let go of the bargain he struck in his plea agreement since the government agreed to move for the dismissal of the remaining two counts in the indictment, citing this Court's decision in *United States v. Hobbs*, 953 F.3d 853 (6th Cir. 2020). According to the government, Juarico-Cervantes, like Hobbs, benefited from a plea agreement, making it "wholly implausible" that he would have risked going to trial by forgoing the benefit of that deal. In *Hobbs*, however, the defendant relied only on a conclusory assertion that he would not have entered the plea, acknowledging "candidly" that there was "no contemporaneous evidence suggest[ing] that he would have rejected the plea deal had the indictment contained the knowledge-of-status element." *Hobbs*, 953 F.3d at 857–58. This is not the case here, where the district court acknowledged contemporaneous evidence in the record supporting Juarico-Cervantes' argument that he would not have pleaded guilty had he been informed of the knowledge of status element.

Further, it is not clear from the record as it stands with what likelihood the government would have been able to obtain convictions on either charge the government agreed to dismiss (especially the charge relating to making a false statement on a federal Firearms Transaction Record, as it is not clear whether the information provided was false). And it is not clear from the

record that Petitioner would not have chosen to plead guilty to a different charge (with perhaps a lesser sentence) than the charge he pled to. These are simply factual issues best suited for review after an evidentiary hearing. *See United States v. Werle*, 35 F.4th 1195, 1202 (9th Cir. 2022) ("The Government argues that the district court's summary denial was proper because there is 'overwhelming' evidence that Werle knew he had been convicted of a crime punishable by more than one year in prison at the time he possessed the firearm, and no rational person in Werle's circumstances would have risked forfeiting a three-level Sentencing Guidelines reduction for acceptance of responsibility by proceeding to trial. We disagree. While some people in Werle's circumstances might rationally choose to plead guilty, others might rationally choose to go to trial. To determine which category Werle falls into, the district court must hold an evidentiary hearing.").

The government also argues that Juarico-Cervantes' awareness that he was a DACA recipient is sufficient evidence that he was aware that he was unlawfully or illegally in the United States, citing this Court's decisions in *United States v. Lopez*, 929 F.3d 783 (6th Cir. 2019) and *United States v. Bernal Berreaza*, 789 F. App'x 534 (6th Cir. 2020). In both *Lopez*[7] and *Bernal Berreaza*,[8] however, this Circuit resolved the substantive legal question of whether DACA status conferred legal status in the United States, and not the factual question of a defendant's awareness that he was unlawfully in the United States. In fact, in *Lopez*, we remanded to the district court to consider the petitioner's argument that he lacked knowledge that he was an alien illegally or

---

[7] In *Lopez*, the Sixth Circuit resolved the question whether 18 U.S.C. § 922(g)(5)(A) was unconstitutionally vague in light of questions regarding whether DACA status conferred lawful status to DACA recipients. The Sixth Circuit determined that the statute was not unconstitutionally vague and that DACA did not confer legal status to recipients.

[8] In *Bernal Berreaza*, this Court applied the decision in *Lopez* to foreclose the defendant's challenge to his conviction under 18 U.S.C. § 922(g)(5)(A) on the basis that DACA conferred legal presence in the United States.

unlawfully in the United States. 929 F.3d at 787 ("Whether the government has or may yet adequately allege that element, however, is an issue we leave to the district court to address in the first instance on remand").

The government adds that the DACA process itself provides notice to applicants that this form of relief does not confer lawful status, citing to the United States Citizenship and Immigration Services' webpage which states that the prohibition on possession of firearms applies to DACA recipients. That argument is unpersuasive, however, because the record does not establish whether, at the time of Juarico-Cervantes' offense, the website contained this notice[9] and it was an open legal question whether DACA recipients were considered unlawfully or illegally in the United States. *Compare United States v. Venegas-Vasquez*, 376 F. Supp. 3d 1094, 1105 (D. Or. 2019) (dismissing § 922(g)(5) charge against DACA recipient and determining that defendant was not unlawfully present in the United States) *with Lopez*, 929 F.3d at 783 (determining that DACA recipients were unlawfully in the United States and that §922(g)(5) was not unconstitutionally vague as applied to DACA recipients) *and United States v. Arrieta*, 862 F.3d 512, 515 (5th Cir. 2017) (same).

Finally, the government raises the question of whether Juarico-Cervantes' DACA status was valid at the time he committed the offense. Juarico-Cervantes replies with several exhibits showing that his DACA status was valid at the time of his offense. This dispute about whether Juarico-Cervantes even had valid DACA status at the time he committed his offense is also a factual dispute that should be resolved by the district court during an evidentiary hearing on remand. All of the evidence that both parties have submitted will be relevant to the ultimate

---

[9] Juarico-Cervantes contends, upon information and belief, that the website did not contain this information at the time of Juarico-Cervantes' offense. Had the district court held an evidentiary hearing, Juarico-Cervantes' attorney may have been able to offer into evidence an internet archive snapshot of the website to prove this point.

question of whether Juarico-Cervantes understood that he was illegally or unlawfully in the United States. The district court could have properly resolved these factual disputes during an evidentiary hearing on whether Juarico-Cervantes had the required mental state to sustain his conviction.

The district court's conclusion that Juarico-Cervantes was fully aware of his status as an alien illegally or unlawfully in the United States, such that a hearing on his *Rehaif* claim was not necessary, was erroneous because it lacked a sufficient factual basis. Instead of developing a sufficient factual basis for its conclusion, the district court made an inference that was not supported by the record and neglected to hold an evidentiary hearing that would have developed a factual basis for its decision to deny Juarico-Cervantes' motion. For these reasons, the district court abused its discretion in denying Petitioner's § 2255 petition and his request for an evidentiary hearing in support of his retroactive *Rehaif* claim.

### 2. Ineffective Assistance Claim[10]

Petitioner's ineffective assistance claim requires that he demonstrate (1) a reasonable probability that he would have appealed had his counsel not acted deficiently, and (2) that he would not have pled guilty if he had known of *Rehaif*'s knowledge requirement. As described above, Petitioner is entitled to an evidentiary hearing on the second question, which is the same question posed by his retroactive *Rehaif* claim. Regarding the first question, the district court concluded that Petitioner had not met his burden, stating that "it is not certain that he would have indeed timely appealed." R. 53, Page ID #312. The district court did not conduct an analysis of whether an evidentiary hearing was warranted, and merely stated generally that "[b]ecause Petitioner's arguments are contrary to law, the Court need not hold a hearing on his motion." *Id.* at Page ID

---

[10] If Petitioner succeeds on his retroactive *Rehaif* claim, his conviction will be vacated, and his ineffective assistance claim will be moot. But, if procedural default becomes an issue after remand, the ineffective assistance claim will regain import. Thus, we address the merits of the ineffective assistance claim.

#314. We disagree with the district court's standard and its conclusion regarding prejudice and find that the evidence presented by Petitioner is sufficient to warrant an evidentiary hearing on the issue of whether he would have appealed.

Petitioner provided at least some evidence that he would have appealed. Text messages between Juarico-Cervantes's mother and Attorney Jones indicate that the sentence received by Juarico-Cervantes was greater than that which Attorney Jones had advised it would be. After he was sentenced, Juarico-Cervantes' mother continued to request that Attorney Jones meet with her son. Even after Attorney Jones sent a text message indicating his belief that the "chances of an appeal going thru are slim," she continued to express a desire on behalf of her son to appeal the sentence. *See* Text Messages, R. 51-1, Page ID #292–93. After he failed to confer with her son about an appeal, Juarico-Cervantes' mother wrote to Jones: "Once again, you lied to us and you did not go to see my son . . . I am unhappy because you are the only one who can give us information about how to follow the process of all this." *Id.* at Page ID #293.

The record does not establish whether Juarico-Cervantes's mother was acting on behalf of her son or on her own behalf.[11] Assuming she acted on his behalf, the evidence suggests that Juarico-Cervantes "promptly expressed a desire to appeal" and might have appealed his sentence had his attorney met with him to discuss the process, notwithstanding his attorney's advice that his chances of succeeding on appeal were low. As the Supreme Court has explained, "where we are [] asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decision making." *See Lee v. United States*, 582 U.S. 357, 368, 371 (2017) (determining that defendant had established

---

[11] This question is yet another one posed by this case that would likely be illuminated by an evidentiary hearing.

prejudice from attorney's error despite lacking a meaningful defense). Furthermore, Attorney Jones submitted an amended affidavit indicating that he had forgotten about the text messages sent from Juarico-Cervantes' mother requesting that he visit her son to discuss filing an appeal. Accordingly, the district court's determination that "it is not *certain* that he would have indeed timely appealed" is clearly erroneous because it wrongly elevated the standard of proof for prejudice to a "certainty" requirement, where all that was needed was a *reasonable probability* that Juarico-Cervantes would have appealed had his attorney consulted with him about an appeal. Op. and Order, R. 53, Page ID #312 (emphasis added).

This evidence is enough to merit a hearing on the question of whether Petitioner would have appealed if counsel had consulted with him. A "§ 2255 petitioner's burden 'for establishing an entitlement to an evidentiary hearing is relatively light,'" *Wright v. United States*, 320 F. App'x 421, 427 (6th Cir. 2009) (quoting *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003)), and may only be avoided where the record "conclusively shows that the petitioner is entitled to no relief," *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (citation omitted). The text messages provided by Petitioner create a factual dispute on a key issue, and thus the district court was required to hold an evidentiary hearing to resolve it.

## IV. CONCLUSION

For the reasons stated above, we **VACATE** the district court's order denying Juarico-Cervantes' § 2255 petition and **REMAND** for an evidentiary hearing on two questions: (1) whether Petitioner would have appealed if not for his counsel's deficient performance, and (2) whether Petitioner would have pleaded guilty had he known of *Rehaif*'s knowledge requirement.